M. W. STEWART, *as Treasurer of Wyandotte County, et al.,* v. DAVID J. ADAMS *et al.*

1. CASE, *Followed.* The case of *Stewart v. Town Co.,* just decided, followed.

2. CITY — *Third Class — Extension of Boundaries.* A city of the third class cannot enlarge its limits from the territory adjacent thereto by an ordinance of the city council only, when the territory sought to be added is not subdivided into lots or parcels of five acres or less. (Gen. Stat. of 1889, ¶ 1018.)

3. ———— *Second Class — Extension of Boundaries.* A city of the second class cannot enlarge its limits from the territory adjacent thereto by an ordinance of the city council only, when the territory sought to be added is not subdivided into lots and blocks. (Gen. Stat. of 1889, ¶ 884.)

4. SCHOOL DISTRICTS — *Creation.* School districts in this state, outside of cities of the first and second class, are created and changed by the county superintendent, as prescribed by ¶¶ 5571, 5572, Gen. Stat. of 1889.

5. CITY — *Change of Class — Old Form of Government.* The mere proclamation of the governor changing the form of a city of the third class to a city of the second class does not leave the city without a city government; and of necessity, until the officers of the new city, as a city of the second class, qualify, the old form of government and the old officers will continue. (*Campbell v. Braden,* 31 Kas. 754; *Ritchie v. City of South Topeka,* 38 id. 370.)

*Error from Wyandotte District Court.*

THIS action was brought in the court below by *David J. Adams,* Julius King and F. B. Mitchener against *M. W.*

*Stewart*, as county treasurer of Wyandotte county, *et al.*, to enjoin the collection of taxes levied upon their property by the city of Argentine. The case was tried upon an agreed statements of facts, and the court rendered judgment in favor of the defendants, perpetually enjoining all the taxes complained of. In 1882, the city of Argentine was created as a city of the third class. The property included in this case was not within its limits when created. No change was made in the city boundaries until 1889, when an ordinance was enacted attempting to extend the limits so as to include this property. All the property so included was not platted into lots and blocks. The trial court made and filed the following conclusions of law:

"1. Said ordinance No. 115, described and set out in plaintiffs' petition, passed May 14, 1889, is illegal and void for the purpose of extending the limits of the city of Argentine, and said ordinance did not add or annex the property of these plaintiffs as described in their petition to said city of Argentine.

"2. The action of the directors of school district No. 40, Wyandotte county, Kansas, on July 24, 1889, in attempting to attach the territory of school district No. 41 to school district No. 40 for school purposes, was illegal and void, and said action of said school directors did not attach the property of the plaintiffs described in the petition to said district No. 40 (which was afterward succeeded by the board of education of the city of Argentine) for school purposes.

"3. The property of these plaintiffs described in the petition has never been legally attached to the city of Argentine for school purposes.

"4. Said ordinance No. 217, described and set out in plaintiffs' petition, passed July 29, 1890, is illegal and void for the purpose of extending the limits of the city of Argentine, and said ordinance did not add or annex the property of these plaintiffs, as described in the petition, to said city of Argentine.

"5. The levies of taxes by the city of Argentine for the year 1891, of 8 mills on the dollar for water, 8 mills on the dollar for light, and 2 mills on the dollar for fire-department supplies, were each and all in excess of the maximum legal amount authorized to be levied by said city under the

law for said year for such purposes, and are each and all illegal and void.

"6. The property of plaintiffs, described in the petition, was not, at any time during the year 1891, within the corporate limits of the city of Argentine; and said property is not liable for any of the taxes or special assessments levied or charged up by the city of Argentine against said property, or for the taxes levied by the board of education of the city of Argentine and charged against the said property for said year 1891.

"7. The plaintiffs are entitled to the relief and injunction prayed for in their petition."

The defendants excepted, and bring the case here.

*J. M. Asher,* for the city of Argentine; *H. A. Bailey,* for the board of education; *Hutchings, Keplinger & Miller,* and *Morgan & Riley,* of counsel for plaintiffs in error.

*White & Earhart,* for defendants in error; *Thos. J. White,* of counsel.

The opinion of the court was delivered by

HORTON, C. J.: The questions in this case are: (1) Was the property of plaintiffs below within the corporate limits of the city of Argentine and subject to taxation therein for the year 1891? (2) If the property was not within the corporate limits of the city, was such property within any territory which had been legally added or attached to the city for school purposes, so as to make it subject to the taxes levied by the board of education of the city for that year? (3) If the property was within the city limits and subject to any taxation therein, were the levies of taxes by the city for water, electric light and fire-department supplies legal?

The last question is answered in the negative by the case
1. Case followed. of *Stewart v. Town Co.,* just decided. It is held, in that case, that "supplies of water, light and for the fire department are among the daily necessities of a city, and naturally fall within the class of expenses which are to be paid out of the general revenue fund." Therefore the

city of Argentine, a city of the second class, after levying 10 mills on the dollar for general revenue purposes in 1891, had no authority to levy in addition the taxes complained of for water, electric light, and fire-department supplies. The city of Argentine claims that the property upon which taxes were levied in 1891, was within the limits of the city under the provisions of either or both ordinances Nos. 115 and 217. Ordinance No. 115 was passed by the city on May 14, 1889, while Argentine was a city of the third class. Ordinance No. 217 was passed on July 29, 1890, and published July 31, 1890, after Argentine had become a city of the second class. · The attempted extended limits of Argentine included unplatted territory as follows: Within the limits established by ordinance No. 115: A tract of 20 acres, marked "A" upon the map; a tract of about eight acres, marked "D;" and three tracts, of about five acres each, marked respectively "F," "H," and "I." Within the limits established by ordinance No. 217, and beyond those established by ordinance No. 115: A tract of about eight acres, marked "B;" a tract of about 10 acres, marked "C;" and a tract of about 15 acres, marked "J." The charter provision for the extension of the limits of cities of the third class is in ¶ 1018, General Statutes of 1889, and provides —

"That whenever the city council of any city of the third class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of the city, present a petition to the board of commissioners of the county in which said city is situated, setting forth by metes and bounds the territory sought to be so added, and praying that such territory may be added thereto. Upon such petition being presented to said board, with proof that notice as to the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published in said city, they shall proceed to hear testimony as to the advisability of making such addition, and upon such hearing, if they shall be satisfied that the adding of such territory to the city will be to its interests, and will cause no manifest injury to the persons owning real estate in the territory sought to be added, they shall make an order declaring

said territory a part of the corporate limits thereof and subject to the laws and ordinances pertaining thereto: *Provided*, That no such proceeding shall be necessary when the territory sought to be added is subdivided into lots or parcels of five acres or less, but in such cases the city council of said city shall have power·to add such territory to said city by ordinance." ( Laws of 1872, ch. 102, § 3, as amended by Laws of 1886, ch. 66, § 4.)

The provisions for extending the limits of cities of the second class are sustantially the same as those for extending the limits of cities of the third class, except that the petition for the second class must be presented to the judge of the district court instead of to the board of county commissoners, as in the third class; and except, also, that in cities of the second class an ordinance of the city council must follow the finding of the judge of the district court. (Gen. Stat. of 1889, ¶ 884; Laws of 1885, ch. 97, § 1, as amended by Laws of 1886, ch. 69, § 1.)

The trial court, in its opinion holding that ordinance No. 217 is void, said, among other things:

"The boundaries set out in the ordinance include a large territory of land, consisting of different tracts and descriptions not included within the prior limits of the city. A portion of the territory so included in the ordinance, and not included within the prior limits of said city, consists of lands which had not been platted or subdivided into lots and blocks, while other portions of said territory had, prior to said time, been so platted and subdivided. No proceeding or action of any kind, either by petition to the judge of the district court or otherwise, as prescribed by said ¶ 884, was had in relation to adding the territory or any part thereof to the city, except the passage and publication of said ordinance. Granting that the ordinance is sufficient by its terms for the addition of territory to the city, that it is void so far as it affects land included within its boundaries not platted or subdivided into lots and blocks, is obvious. No authority was vested in the mayor and council of said city to extend the limits of the city to include unplatted territory, without first performing the requirements of said ¶ 884, in relation thereto. Then is said ordinance valid as to the platted territory included within the boundaries therein set out, and which was not included

within the prior limits of said city? One portion of an act or ordinance may be void for want of authority in the body enacting it, and other portions of such act or ordinance may be valid and effectual for the purposes intended; but in order to constitute such portion valid and effectual, it must be capable of being separated from the invalid portion; and when the invalid portion is stricken out, that which remains must be complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected. The purpose of this ordinance, (if it can be construed to intend the addition of any territory to the limits of said city,) was to accomplish a single object only, viz., the addition of all the territory included within its boundaries not included within the prior limits of said city. This is attempted to be done in one section and under one description. A portion of this territory was unplatted, and beyond the authority of the mayor and council to add to the city by such ordinance. The platted and unplatted portions are inseparably connected with each other in said ordinance, and it cannot be presumed that the mayor and council would have added one without the other. Therefore, the whole must be held void."

As to ordinance No. 115, the trial judge, in his opinion, stated that that ordinance is also void for the same reasons that ordinance No. 217 is void.

We think the reasons given by the trial judge are sufficient to show that the city council, in passing both ordinances Nos. 115 and 217, acted without jurisdiction, as 2. City—third class—extension of boundaries. all the territory sought to be added was not subdivided into lots and blocks, as prescribed by the statutes; and that it cannot be said, considering the language of the ordinances, that either ordinance is valid as 3. Second class —extension of boundaries. to the tracts or pieces of land subdivided into lots and blocks, but not valid as to the tracts or pieces of land which were not subdivided or platted. In this case, the ordinances must all stand or fall together, because all of the parts are inseparably united.

The first question, as well as the third, presented for our determination, must be answered, for the foregoing reasons, in the negative. The second question presented may also be

disposed of upon the opinion delivered by the trial judge. The part we refer to is as follows:

"The city of Argentine was, on July 20, 1889, by proclamation of the governor, declared a city of the second class. July 24, 1889, a petition of citizens of school district No. 41, in which the lands of plaintiffs were then situated, was presented to the school board of school district No. 40, which included the city of Argentine, as a city of the third class, asking to be annexed to district No. 40, the prayer of which petition was then granted by the school board of district No. 40, as shown by the records of the district. On July 26, 1889, the following entry was made by the county superintendent in the records of his office:

"'WHEREAS, By proclamation of the governor of the state of Kansas, the city of Argentine was proclaimed a city of the second class, said proclamation bearing date of July 20, 1889; and

"'WHEREAS, Application was duly made to the school board by the city of Argentine, by a majority of—all but one—the residents of school district No. 41, praying that school district No. 41 be attached to the city of Argentine for school purposes, and the application was duly received and accepted by the school board of the city of Argentine on the 24th day of July, school district No. 41, was and is hereby attached to the city of Argentine for school purposes, and ceases to exist as an independent and separate district. Dated July 26, 1889.

"'EDW. F. TAYLOR, County Superintendent.'

"No other action or proceeding was had in the matter of changing the school district, or attaching the territory to the city of Argentine for school purposes. Since the 24th day of July, 1889, the board of directors of school district No. 40, and the board of education of the city of Argentine, after its election and organization, has assumed control and jurisdiction for school purposes of the territory formerly known as district No. 41, and levied taxes for school purposes upon the property therein.

"The city of Argentine, as a city of the third class, was a part of district No. 40. School districts in this state, outside of cities of the first and second class, are created and changed by the county superintendent. Paragraph 5571, General Statutes of 1889, of the act relating to schools, provides: 'It shall be the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts, and to change such districts when the interest of the inhabitants thereof require it; but only after 20 days' notice thereof, by written notices posted in at least five public places in the district to be changed.' (Laws of 1881, ch. 152, § 12.)

"There was no power vested in the board of directors of school district No. 40 to change the boundary of the district. This could be done only by the county super-

4. School districts —creation.

intendent, and by him only after public notice thereof, as required by ¶ 5571. (Laws of 1881, ch. 152, § 12.) No such notice thereof having been given, and no action taken therein by the county superintendent, except to record the action of the school board, said territory could not have been added to school district No. 40 by such proceedings under the provisions of ¶ 5571.

"Again, when the city of Argentine became a city of the second class, it became subject to different laws, both as a municipality and as a school district. The limits of the school district then became coextensive with the limits of the city, and territory outside the city limits could then be attached to such city for school purposes only in the manner prescribed by ¶ 5725, General Statutes of 1889. (Laws of 1876, ch. 122, art. 11, § 3, of the act relating to schools.) I think the city of Argentine became a city of the second class at the time of the publication of the governor's proclamation declaring it to be subject to the provisions of law governing cities of the second class, on July 20, 1889; (Gen. Stat. of 1889, ¶ 756; Laws of 1872, ch. 100, art. 1, § 1, as amended by Laws of 1889, ch. 99, § 1;) and that, from and after that date, the school board of school district No. 40 could exercise no authority or perform any act therein other than what was necessary for the preservation of the school property and the maintenance of the schools, until the election and organization

5. City—change of class—old form of government.

of the board of education for the city as a city of the second class, as provided by law." (*Ritchie v. City of South Topeka*, 38 Kas. 371; *Moser v. Shamleffer*, 39 id. 635.)

One question only remains: Were the plaintiffs below estopped by acquiescence? They are and have always been nonresidents; they neither petitioned nor voted. One tax only has been levied since the attempted extension of the limits of the city of Argentine, and the attempted union of school district No. 41 with school district No. 40, prior to the levies of 1891, which are complained of. It was said in *Armstrong v. City of Topeka*, 36 Kas. 432, by this court, that—

"We do not believe that the payment of a tax, whether

legally or illegally assessed, would be a ratification by plaintiff, or would in any manner estop him from denying that the land was a part of the city of Topeka. The plaintiff gains nothing thereby; the city loses nothing; on the contrary, the city obtains the advantage of the tax, and in this we fail to see any element of ratification, or anything that would estop the plaintiff in this matter." (See, also, *Railroad Co. v. Maquilkin,* 12 Kas. 304; *Jay v. Board of Education,* 46 id. 527; *City of Topeka v. Gillett,* 32 id. 431.)

We think there was no acquiescence, especially no long acquiescence, which can be insisted upon to prevent plaintiffs below from being relieved of the taxes levied in 1891.

In the case of *Ritchie v. Mulvane,* 39 Kas. 241, the real estate was sold at tax sale, and under § 142 of the tax laws the purchaser was permitted to recover the state, county and school-district taxes, but not the city taxes; but in this case there has been no tax sale, tax certificate, or tax deed issued for the levies of 1891.

The judgment of the district court will be affirmed.

All the Justices concurring.