The Honorable Richard Lahti State Representative, Eighty-Fifth District 6428 Rodeo Wichita, Kansas 67226
The Honorable Darlene Cornfield State Representative, Ninetieth District 7 Weatherly Court Valley Center, Kansas 67147
Dear Representatives Lahti and Cornfield:
You request an opinion concerning the application of a charter ordinance establishing a quorum requirement in a city of the third class when that city subsequently becomes a city of the second class.
Prior to July 1, 1994, Park City was a city of the third class. In 1993, charter ordinance no. 11-93 was enacted which exempted the city from K.S.A. 15-106 and instead established a quorum requirement of 4 (out of 5) council members. [K.S.A. 15-106 requires a majority of council members to constitute a quorum.] On July 1, 1994, the governor issued her proclamation establishing Park City as a city of the second class pursuant to K.S.A. 14-101. On September 20, 1994, the city council unanimously adopted a charter ordinance which exempted the city from certain statutes pertaining to cities of the second class pending a referendum pursuant to article 12, section 5(c)(3) of the Kansas constitution which allows a governing body to submit any charter ordinance to a referendum without a petition.
The problem that we address occurred at a September 27 council meeting where only three council members were present. At this meeting the three members passed the ordinance calling for the election on the charter ordinance and fixing the date. [Article 12, sec. 5(c)(3) provides that the governing body shall pass an ordinance calling the election and fixing the date for the referendum on the charter ordinance which is then published in the official city newspaper for a specific number of weeks.] The issue is whether a quorum was present at the September 27, 1994 meeting. If charter ordinance no. 11-93 applies then there was no quorum because charter ordinance no. 11-93 requires the presence of 4 council members in order for the body to conduct business. However, if K.S.A.14-111 [which addresses quorum requirements for cities of the second class] applies, a majority of the council members constitutes a quorum and, since 3 of 5 members were present, a quorum existed.
K.S.A. 14-101 provides, in relevant part, as follows:
 "All cities now organized and acting as cities of the second class . . . shall be governed by the provisions of this act; and whenever any city shall have hereinafter obtained a population of more than 2,000, and such facts shall have been duly ascertained and certified by the proper authorities of such city to the governor, the governor shall declare, by public proclamation, such city subject to the provisions of this act. . . ."
 "The change in classification of any city under the provisions of this section shall take effect on the date the proclamation of the governor is issued unless a latter date is specified therein, in which case the change in classification shall take place on such latter date. The governing board of any such city, holding office at the time of the proclamation, shall continue to be the governing board of such city and the members of such board shall hold their respective offices until the next city election in an odd numbered year." (Emphasis added).
K.S.A. 14-111 states, in relevant part, as follows:
 "Regular meetings of the council shall be held at such times . . . as shall be prescribed by ordinance. . . . In all cases, it shall require a majority of the council members elect to constitute a quorum to do business. . . ." (Emphasis added.)
The larger question presented in the Park City situation is what happens to charter ordinances that had previously exempted the city from the statutes found in chapter 15 which are applicable to cities of the third class when the city becomes a city of the second class and becomes subject to the statutes found in chapter 14 which are applicable to cities of the second class?
Case law prior to the home rule amendment supports the notion that when a city of the third class becomes a city of second class the operation of laws which before that time had governed the city is suspended by the proclamation of the governor and the city is advanced to a higher classification which then subjects the city to a new code of laws. Stateex rel. Atwood v. Hunter, 38 Kan. 578, 587-88 (1888); Stewart v. Adams,50 Kan. 560, 567 (1893). K.S.A. 14-101 is clear that cities "organized and acting" as cities of the second class are to be governed by the provisions of chapter 14 at the point when the proclamation is issued, or some later date specified by the proclamation. However, article 12, section 5(c)(4) of the Kansas constitution provides that each charter ordinance controls and prevails over "any subsequent act of the governing body" and can be repealed or amended only by another charter ordinance or by legislative enactments applicable to all cities.
Under the constitution, one can argue that the quorum requirement in charter ordinance no. 11-93 prevails over the quorum requirement of K.S.A. 14-111 until the charter ordinance is repealed by another charter ordinance or by a legislative enactment applicable to all cities (which chapter 14 is not). On the other hand, it can be argued that article 12, section 5(c)(4) does not apply because there was no "subsequent act of the governing body" in that the application of chapter 14 statutes was engaged by operation of law when the city changed classification and, therefore, the charter ordinance is rendered ineffective by operation of law.
In the absence of case law on this issue, we believe that the latter analysis is correct and that when a city of the third class changes classification to a city of the second class, all of its charter ordinances exempting the city from statutes found in chapter 15 are ineffective by operation of law. Consequently, if a newly established city of the second class does not want to follow the statutes in chapter 14, it will not be able to rely on those charter ordinances that had previously exempted the city from the application of statutes found in chapter 15. Rather, the newly established city of the second class will have to abide by the statutes in chapter 14 unless it exempts itself by charter ordinance. This is apparently the course of action being taken by Park City.
Finally, we feel compelled to address the holding of an 1888 Kansas Supreme Court case the facts of which are very similar to the situation in Park City but the holding of which differs from our conclusion that the charter ordinance does not prevail over K.S.A. 14-111.
In Ritchie v. City of South Topeka, 38 Kan. 368 (1888) the city of South Topeka was organized as a city of the third class in 1885 and, on June 4, 1886 it become a city of the second class by virtue of the governor's proclamation under K.S.A. 14-101. Before the election of three additional council members occurred, four of the members of the old 5 member council passed an ordinance levying a special assessment. An unhappy property owner argued that the ordinance was invalid because there was no quorum present when the ordinance was passed. As a city of the third class the council consisted of five members where a quorum consisted of three, however, as a city of the second class, the council would eventually consist of eight members with a quorum of five. Consequently, the taxpayer argued that because the city was a city of the second class, a majority of five was necessary to constitute a quorum. The court concluded that there had to be some city government during the interim between the proclamation and the election of new council members. Therefore the court held that the old form of government (i.e. statutes governing cities of the third class) would continue until the new officers of the city qualified and, therefore, the quorum of three was applied and the ordinance upheld.
When Ritchie was decided, K.S.A. 14-101 contained no provision concerning when the change of classification would take effect and because new city officers were not elected until April, it was unclear when the city was to begin operating under the statutes governing cities of the second class. K.S.A. 14-101 was amended the year following theRitchie decision to allow for the city to begin operating as a city of the second class when the new mayor and council members were elected in a special election which occurred within three months after the issuance of the proclamation. However, in 1968, K.S.A. 14-101 was amended to provide that the change of classification would take effect immediately upon issuance of the proclamation but that the governing body would continue as such until the next city election when new officers were elected.
It is our opinion that the Ritchie decision has no application here because of the 1968 amendments which clarified at what point the laws governing cities of the second class would apply.
Summarizing, it is our opinion that when a governor's proclamation is issued changing the classification of a city of the third class to a city of the second class, any charter ordinance that had previously exempted the city from statutes dealing with cities of the third class is ineffective by operation of law and the statutes found in chapter 14 pertaining to cities of the second class apply unless the newly established city of the second class exempts itself from the operation of those statutes by charter ordinance.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm