STEINHAGEN et al. v. EASTHAM et al.
(No. 720.)

(Court of Civil Appeals of Texas. Beaumont.
June 2, 1921. Rehearing Denied
June 23, 1921.)

1. **Constitutional law** 31—**Municipal corporations** 29(1)—**Special charter provision for charter amendment or annexation of territory repealed by Enabling Act.**

The Home Rule Amendment (Const. art. 11, § 5) and the Enabling Act (Acts 33d Leg. c. 147), approved April 7, 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), together constitute a self-executing law that must be applied whenever a city of over 5,000 population adopts a new charter or amends an existing one; hence section 3 of the 1909 charter of the city of Beaumont, respecting annexation of adjoining territory, was repealed by article 1096b, prescribing a different and inconsistent procedure for annexation.

2. **Statutes** 162—**Special repeals general one if intent appear.**

The general rule that a general law does not by implication repeal a special one, although both relate to the same subject-matter, is inapplicable when the language of the general act clearly manifests the legislative intention to make such change.

3. **Municipal corporations** 46—**Prohibition against amendment oftener than every two years cannot be invoked where prior amendments relied on were under superseded procedure.**

An election under the Enabling Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), changing a city charter by adopting a new one, was not invalidated, under the inhibition of the Home Rule Amendment (Const. art. 11, § 5), forbidding alteration, amendment, or repeal of a city charter oftener than every two years, by attempted charter amendments within two years previous thereto, where such attempted amendments were invalid because they followed the procedure prescribed by the city charter as to amendments which had been superseded by the provisions of the Enabling Act (art. 1096b) as to city charter amendments.

4. **Municipal corporations** 27—**Cities have plenary power to annex territory under Home Rule Amendment.**

The plenary power of the Legislature to extend the boundaries of cities was by the Home Rule Amendment (Const. art. 11, § 5) taken from the Legislature and conferred on cities of over 5,000 population, except that in making changes such cities are limited to the procedure prescribed by the Enabling Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i).

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by C. S. Eastham and others against B. A. Steinhagen and others. From judgment granting plaintiffs an injunction, de-

fendants appeal. Reversed, and injunction dissolved.

Chas. D. Smith and Gordon, Lawhon & Pool, all of Beaumont, for appellants.

E. B. Pickett, Jr., of Liberty, for appellees.

FOSTER, Special Judge. This is an appeal from a judgment of the district court of Jefferson county granting plaintiffs a temporary injunction restraining defendants, the mayor, city manager, commissioners, and tax collector of the city of Beaumont, from enforcing, or attempting to enforce, any ordinance of said city within the territory designated as the "French district" and the "South Park district," and from levying, collecting, or attempting to collect, any taxes against or upon any property, real or personal, situated therein. Plaintiffs (appellees here) are residents of said districts, and own property therein.

[1] The territory of the two districts named was not embraced within the boundaries of the city as fixed by, or in pursuance of, the provisions of the charter of 1909, which charter was granted by special act of the Legislature (chapter 92), and under which the city existed as a corporate municipality until December 30, 1919. On said date a charter, framed by a commission, was adopted by a vote of the qualified voters residing within the limits of the city as fixed by the old charter (1909). Beaumont at said time was a city of more than 5,000 inhabitants, and the new charter (of December 30, 1919) was framed, and the election held, under and in conformity with chapter 147, General Laws of the Thirty-Third Legislature. This is the Enabling Act, approved April 7, 1913, which put into effect the "Home Rule Amendment" to our state Constitution, and constitutes articles 1096a to 1096i, inclusive, Vernon's Sayles' Texas Civil Statutes. The qualified voters of the French district and the South Park district, including plaintiffs, were not permitted to vote at said election. The boundaries of the city as fixed by the new charter, adopted in 1919, included the territory of the two districts mentioned, and excluded the "Chaison tract" of 49 acres, which was a part of the city as defined in the charter of 1909.

Plaintiffs alleged that the charter of 1919, adopted under the Home Rule Amendment and the Enabling Act, could not, when adopted, embrace territory other than that defined in the then existing charter, and that the attempt to include the French and South Park districts was void; that no new territory could be annexed except in conformity with the old charter. Here it may be stated that the procedure prescribed by the old

charter for changing the city's boundaries is materially different from the method provided in the Enabling Act.

Another ground of attack by plaintiffs asserts that the election of December 30, 1919, was void, as an attempt to alter the city charter in violation of the Home Rule Amendment, which provides "that no city charter shall be altered, amended, or repealed oftener than every two years;" and it was alleged that the city of Beaumont had on three occasions, within two years prior to December 30, 1919, amended its charter—twice by elections, that each resulted in the city levying an increased school tax, and once by annexing to and including within the city's boundaries "block 1 of the Oaks Addition." The tax elections were held in 1918 and 1919, respectively, and block 1 of the Oaks Addition was annexed in October, 1919. Its annexation was attempted in pursuance of the method provided in the charter of 1909.

These contentions present the questions that we regard as decisive of this appeal, and the argument of appellees may be briefly summarized thus: (a) That the charter of 1909, including section 3 thereof, providing the procedure for annexing territory to the city, remained in full force until the result of the election of December 30, 1919, was ascertained, and that, since such procedure was not followed in annexing the French and South Park districts, their status was unaffected by said election, and they are therefore not a part of the city; (b) that the city could not adopt a new charter at said election, and at the same time enlarge its territorial limits, in the manner provided by the Enabling Act, because, it is asserted section 3 of the charter of 1909 was unaffected by said act until the new charter was adopted by the election of December 30, 1919; and (c) that the election for adopting a new charter was within the inhibition of the Constitution forbidding alteration, amendment, or repeal of a city charter oftener than every two years.

The contentions and argument of appellees, as stated, may, we think, properly be said to raise but a single question of law—the construction of the Home Rule Amendment and the Enabling Act. If the provisions of said act in reference to amendment of charters were applicable to the city of Beaumont from the time it became a law on July 1, 1913, and did not depend for their vitality (as applied to said city) upon the election of December 30, 1919, then it follows that the tax elections and the annexation of block 1 of the Oaks Addition were not valid amendments to the city charter, and they interposed no obstacle to the adoption of the new charter, since it is admitted that the procedure to amend prescribed by the Enabling Act was not attempted to be applied. In this we do not mean to indicate that we regard said elections and annexation as amendments to the charter, aside from the question with which we are here concerned. Such a consideration suggests questions that it is not necessary now to decide, though the Court of Civil Appeals of the Third District recently held that the addition of new territory to the city of Waco constituted an amendment or alteration of the city charter. City of Waco v. Higginson, 226 S. W. 1084.

The Home Rule Amendment was adopted November 5, 1912. It constitutes section 5 of article 11 of the Constitution, and reads as follows:

"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state; said cities may levy, assess and collect such taxes as may be authorized by law or by their charters; but no tax for any purpose shall ever be lawful for any one year, which shall exceed two and one-half per cent. of the taxable property of such city, and no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent. thereon; and provided, further, that no city charter shall be altered, amended or repealed oftener than every two years."

The first article of the Enabling Act, except for slight differences in punctuation and the use of the word "providing" where "provided" occurs in the amendment, is identical with said amendment. The next article of said act, being article 1096b of the statute reads:

"The legislative or governing authority of any incorporated city, having more than five thousand inhabitants may, by a two-thirds vote of its members, or upon petition of ten per cent. of the qualified voters of said city, shall provide by ordinance for the submission of the question, 'Shall a commission be chosen to frame a new charter?' The ordinance providing for the submission of such question shall require that it be submitted at the next regular municipal election, if one should be held, not less than thirty nor more than ninety days after the passage of said ordinance; otherwise it shall provide for the submission of the question at a special election to be called and held not less than thirty days, nor more than ninety days, after the passage of said ordinance and the publication thereof in some newspaper published in said city. The ballot containing such question shall bear no party designation, and provision shall be made thereon for the election from the city at large of a charter commission

of not less than fifteen members or more than one member for each three thousand inhabitants, provided, that a majority of the qualified voters, voting on such question shall have voted in the affirmative. The charter so framed by said commission shall be submitted to the qualified voters of said city at an election to be held at a time fixed by the charter commission not less than forty days nor more than ninety days after the completion of the work of the charter commission; provision for which shall be made by the legislative or governing authority of the city in so far as not prescribed by general law. Not less than thirty days prior to such election the legislative or governing authority of said city shall cause the city clerk or city secretary to mail a copy of the proposed charter to each qualified voter in said city as appears from the tax collector's rolls for the year ending January 31st, preceding said election. If such proposed charter is approved by a majority of the qualified voters, voting at said election, it shall become the charter of said city until amended or repealed; provided, that in preparing the charter, the commission shall, as far as practicable, segregate each subject so that the voter may vote 'Yes' or 'No' on the same. Provided, that where the legislative or governing authority of any city, or where any mass meeting has selected a charter committee, or charter commission, or where the mayor of any city has appointed a charter committee which has proceded with the formation of a charter for said city, the provisions of this section as to the selection of the charter commission shall not apply to the first charter election to be held in said city under the terms of this act. No charter shall be considered adopted until the votes have been counted and an official order entered upon the records of said city by the legislative or governing authority of such city declaring the same adopted. When the legislative or governing authority of any city of more than five thousand inhabitants deems it preferable to submit amendments to any existing charter and in the absence of a petition hereinbefore provided for, said legislative or governing authority may, on its own motion, and shall upon the petition of at least ten per cent. of the qualified voters of said city submit any proposed amendment or amendments to such charter; provided, that the ordinance providing for the submission of any proposed amendment or amendments shall require that it, or they, be submitted at the next regular municipal election, if one shall be held, not less than thirty nor more than ninety days after the passage of said ordinance; otherwise it shall provide for the submission of the amendment or amendments at a special election to be called and held not less than thirty nor more than ninety days after the passage of said ordinance, and the publication thereof in some newspaper published in said city. The legislative or governing authority of said city shall cause the city clerk or city secretary to mail a copy of the proposed amendment or amendments to every qualified voter in said city as appears from the tax collector's rolls for the year ending January 31st, preceding said election. Every such proposed amendment or amendments, if approved by the majority of the qualified voters voting at said election, shall become a part of the charter of said city.

Each and every amendment or amendments submitted must contain only one subject and in preparing the ballot for such amendment or amendments, it shall be done in such a manner that the voter may vote 'Yes' or 'No' on any one amendment or amendments, without voting 'Yes' or 'No' on all of said amendments; and provided that no amendment or amendments shall be considered adopted until the votes have been counted and an official order has been entered upon the records of said city by the legislative or governing authority of such city, declaring the same adopted. Provided that no ordinance shall be passed submitting an amendment or amendments until twenty days' notice has been given of such intention by publication for ten days in some newspaper published in said city. By 'twenty days' is meant from the first date said notice is published.

"Provided, that nothing in this act shall prevent the qualified voters of any city of over five thousand inhabitants from adopting any charter or amendment thereto, and at the same time electing officers under such charter or amendment."

In the enactment of article 1096b, the Legislature was dealing with the amendment of existing charters, as well as the adoption of new charters, by incorporated cities of more than 5,000 inhabitants, and a detailed and comprehensive procedure was prescribed for the accomplishment of either object. The constitutional license to cities permits them to "adopt or amend" their charters "subject to such limitations as may be prescribed by the Legislature." By the Enabling Act, especially article 1096b, the Legislature clearly and positively supplied the limitations applicable where either is attempted. But it was said in argument that the amendment is permissive only, and that cities thereunder may adopt or amend their charters. This is true in a qualified sense. The meaning is that such cities may continue their corporate existence under the same charter that was in force when the Enabling Act became a law. That much is permitted, but when a new charter is sought or an amendment to an existing charter is desired the "limitations" prescribed by the Legislature, which clearly are authorized by the amendment, must be found in the Enabling Act. A detailed procedure is there prescribed, and there is nothing in either the amendment or the law itself to indicate that such procedure need not be applied in effectuating such adoption or amendment. On the contrary, the provisions are found to be applicable alike in either case. There is nothing in the law to suggest that any provision in an existing charter in reference to amendment thereof must be followed instead of the procedure prescribed by the law itself. Certain it is, it seems to us, that the terms of the law furnish a legislative construction of the amendment, and in our opinion a construc-

tion that is commanded by the language of the amendment itself. The amendment and the Enabling Act, in connection therewith, together constitute a self-executing law that must be applied whenever a city of the class dealt with adopts a new charter or amends an existing one. We therefore hold that section 3 of the charter of 1909 (Loc. & Sp. Acts 31st Leg. c. 92) was repealed and superseded by article 1096b of the Enabling Act. Said section 3 which was so removed from the old charter reads:

"Any territory adjoining the present or future boundaries of said city may from time to time, in any size or shape, be admitted and become a part thereof, on application made or written consent given to the city council by the owner or owners of the land, or, as the case may be, by a majority of the legal voters resident on the land sought to be added."

In the annexation of additional territory by an amendment of the charter the method provided by the quoted section of the 1909 charter is different from, and entirely inconsistent with, the procedure prescribed by the Enabling Act. It therefore was repealed thereby. Cohen v. Houston, 176 S. W. 809; East St. Louis v. People, 124 Ill. 655, 17 N. E. 447; East St. Louis v. Amy, 120 U. S. 600, 7 Sup. Ct. 739, 30 L. Ed. 798; Buford v. State, 72 Tex. 182, 10 S. W. 401; 28 Cyc. pp. 238 to 242, inclusive; Mayor, etc., of Mobile v. Dargan, 45 Ala. 310.

[2] We do not question the general rule of statutory construction quoted by appellees that "a general law does not by implication repeal a special one, although both relate to the same subject-matter," but it has no application when the language of the general act clearly manifests an intention on the part of the Legislature to make such change. The principle applicable to the facts here is thus stated in 28 Cyc. p. 242:

"Where the Constitution prescribes the mode of adoption of an amendment or new charter by a municipality, such mode is generally exclusive, and must be strictly pursued. So when the mode of municipal action to amend or reorganize is prescribed by statute, an amendment or reorganization attempted in any other mode or without substantial compliance with mandatory requirements of the statute is null and void."

In East St. Louis v. Amy, supra, the city charter authorized the city council to borrow money, but the power of special taxation to pay interest and provide a sinking fund was limited to three mills on the $1 upon each annual assessment. Subsequently the state of Illinois adopted a new Constitution, in which it was provided that no municipal corporation should become indebted above a named percentage of the value of taxable property therein, and further that, at the time of incurring any indebtedness, it should provide for the collection of a direct annual tax sufficient to pay the interest on such debt, and to discharge the principal within 20 years. In a contest wherein plaintiffs, under and in pursuance of the constitutional provisions, sought to enforce a higher rate of taxation than was permitted by the charter, it was said by Chief Justice Waite:

"In our opinion the Constitution removed from the charter the limitation upon the power of the council to tax for the payment of any bonded indebtedness which might thereafter be incurred, and gave authority to levy and collect enough to meet the interest as it fell due, and the principal within 20 years."

A like construction was applied by the Supreme Court of Illinois in East St. Louis v. People, supra. There authorities are merely special applications of the principle we have applied to the facts of this case.

In Spears v. City of San Antonio (Sup.) 223 S. W. 167, while the question was not decided, Justice Greenwood clearly intimated a view of the constitutional amendment and the Enabling Act that is in consonance with the opinion we have expressed. The city of San Antonio had voted to accept the benefits of chapter 11, tit. 22, Revised Statutes of 1911, in reference to street improvements. After stating that the question presented involved the constitutionality of the law as a delegation of legislative power, it was said:

"The election provided for in the act was held in San Antonio on the very day the law became operative putting the Home Rule Amendment to the Constitution into effect, and therefore there could be no compliance at the election with the terms of said law. Hence the question stated must be determined without reference to the power conferred on cities of more than 5,000 inhabitants by said amendment, with regard to the adoption and amendment of charters."

[3] We have thus far assumed that the tax elections and the annexation of block 1 of the Oaks Addition would have constituted amendments to the city charter had the provisions of the Enabling Act been applied. Whether they could properly be regarded as amendments if the procedure prescribed by the Enabling Act had been followed, as indicated heretofore, it is unnecessary to decide. If that question were before us, and were answered in the negative, the result would be the same, since appellees would not then be in position to invoke the prohibitive proviso against alteration, amendment, or repeal of a charter oftener than every two years.

[4] Prior to the adoption of the Home Rule Amendment, the power of the Legislature to fix the boundaries of an incorporated city, or to alter such boundaries by the annexation or elimination of territory, was plenary, unless restricted by constitutional limitations, and it was held in Graham v.

City of Greenville, 67 Tex. 62, 2 S. W. 742, that the power of the Legislature to extend the boundaries of a city so as to include additional territory was not restrained by the Constitution. Such was the authority of the Legislature when the Home Rule Amendment was adopted. The amendment divested the Legislature of this power, and conferred it upon all cities of more than 5,000 inhabitants. Thereafter the authority of the city of Beaumont in reference to enlarging or otherwise altering its territorial limits was the same as that which the Legislature had previously possessed, except only that in making changes it must observe the procedure prescribed in the Enabling Act. The authority with which the city was thus clothed extended to the city as then territorially constituted, and when the city, in connection with the adoption of a new charter, annexed the French and South Park districts, and eliminated the Chaison tract, it was clearly acting within such authority. This was ruled in the Cohen Case, supra, and we think that authority clearly applicable to the facts of this case.

It follows, therefore, from what we have said, that the facts relied on as amendments to the charter of 1909 were not such, because the procedure of the Enabling Act was not followed in the tax elections or the annexation of block 1 of the Oaks Addition, and that the prohibition of the amendment against alteration, amendment, or repeal of a charter oftener than every two years was not violated when the new charter was adopted. It also appears that the objections made to the changes of territory in the adoption of the new charter cannot be sustained.

In view of the disposition that we have made of the case, it becomes unnecessary to discuss the other questions raised.

In our opinion the judgment of the lower court was erroneous, and should be reversed, and the injunction dissolved; and it is so ordered.

STRONG, Special Chief Justice, and O'QUINN, J., concur.

HIGHTOWER, C. J., and WALKER, J., disqualified, and not sitting.