# FEBRUARY, 1944

CITY OF HOUSTON ET AL V. STATE OF TEXAS EX REL CITY OF
WEST UNIVERSITY PLACE ET AL.

No. 8138. Decided December 1, 1943.
Rehearing overruled February 2, 1944.
(176 S. W., 2d Series, 928.)

*Lewis W. Cutrer,* City Attorney, *Lester Settegast* and *Harry G. Dippel,* Assistant City Attorneys and *Ernest H. Folk,* all of Houston, for petitioners.

It was error for the Court of Civil Appeals to hold that the City of Houston could not validly annex territory adjacent to it and not forming the part of any other municipality even if in so doing the City of West University Place was precluded from further expanding its corporate limits. City of Gladewater v. State ex rel Walker, 157 S. W. (2d) 641; Cleveland v. Ward, 116 Texas 1, 285 S. W. 1063; McQuilin Mun. Corp., sec. 162, p. 476.

*Gerald C. Mann,* Attorney General, *Dan W. Jackson,* Criminal District Attorney of Harris County, *A. J. Lamonte,* City Attorney City of West University Place, *W. Ray Scruggs* and *Harvey T. Fleming,* all of Houston, for respondent.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

This is a quo warranto suit brought on the relation of the City of West University Place through its elected officers (appearing in both their official and tax-paying capacities) and two taxpaying citizens of the unappropriated territory in question against the City of Houston and its elected officials in which plaintiffs seek to have Houston's ordinance purporting to annex said territory declared invalid. The trial court instructed a verdict in favor of plaintiffs and against the defendants, nullifying the ordinance. The Court of Civil Appeals affirmed the judgment. 171 S. W. (2d) 203.

The writ was granted upon the City of Houston's point alleging that the Court of Civil Appeals was in error in holding that the City could not annex territory adjacent to it if the result of such annexation was to preclude respondent from further expanding its boundaries. Upon mature consideration we hold that the tenative opinion which we entertained when the writ was granted, was correct.

We accept as correct for present purposes the map accompanying (171 S. W. (2d) 205) the opinion of the Court of Civil Appeals. It together with the description and the Court's discussion thereof correctly designated the territory involved, and the location thereof with respect to the two municipalities. In the view we take of the case it is unnecessary to discuss the technical proceedings, respectively, of the municipalities looking to the annexation of the territory further than will be hereafter stated in the matter of Houston's prior jurisdictional right over same for annexation purposes.

The territory in question was adjacent to both cities and under their respective charter powers was subject by constitutional and statutory right to annexation by either. 2 Vernon's Anno. Const. Art. 11, sec. 5, p. 529; 2 Vernon's Tex. Civ. St., Art. 1175, sec. 2, p. 1055. The cited article of the constitution is the Home Rule Amendment and the cited section of the statutory article is the section of the enabling act passed pursuant to the provisions of article 11. The purpose of the people in adopting the Home Rule Amendment is thus declared by this Court speaking through Commissioner Powell in response to certified questions in City of Houston v. City of Magnolia Park, 276 S. W. 685:

"It is the purpose of the people to bestow upon the cities coming under the Home Rule Amendment 'full power of local self-government.' This was the declared purpose of the Enabling Act passed in January almost immediately after the new home rule section of the Constitution had been adopted. * * * It was the intention of the citizenship of this state to give to cities the right to determine for themselves what kind of charter they should live under. Until their population exceeded 5,000, they were subject to the general law in their incorporation. After that, they could avail themselves of the Home Rule Amendment and change their charters at their pleasure."

Section 2 of the enabling act provides that cities adopting a charter or amendment under the Home Rule Amendment shall

have "the power to fix the boundary limits and the annexation of additional territory lying adjacent to such city" in accordance with its charter rules. Houston's charter (Sec. 2b) provides that its governing body "shall have power by ordinance to fix the boundary limits" of the city and to annex "additional territory lying adjacent to said city." The only limitation on the city's power to annex additional territory is that it shall be adjacent thereto and not a part of any other municipality, as will subsequently be shown.

■ The Court of Civil Appeals correctly stated in its opinion that it was not concerned with the motives of the governing body of the City of Houston in undertaking to annex the territory involved, and correctly pointed out that home rule cities in altering their boundaries must observe the procedure prescribed by the enabling act. No question was made by the Court of the city's method of procedure in the enactment of the annexation ordinance in the present case. Houston was in the process of passing its ordinance annexing the territory in question when respondent, West University Place, began proceedings looking to the annexation of the same territory, along with other territory. The Court of Civil Appeals held in this connection that the City of Houston by annexing the territory (which lay adjacent to both cities) would destroy the right of West University Place (also a home rule city) to thereafter annex additional territory, inasmuch as the result would be to complete the encirclement of that city; and for this reason declared the annexing ordinance void. The Court relied upon the Magnolia Park case, supra, as affording a basis for such holding. We cannot agree either with the Court's holding that the ordinance was invalid or with its view of the case relied upon.

■ The holding in the Magnolia Park case, insofar as it has any bearing upon the present case, was that one municipality could not absorb by annexation another municipality of equal dignity, and thereby *destroy its right of self government* guaranteed to it under the Home Rule Amendment. While it is true that the result of the passage of the annexation ordinance would be to absorb within the boundaries of the City of Houston all of the unappropriated territory mutually adjacent to that city and West University Place, none of the *govermental power* of West University Place would be thereby taken away. The result would be merely to leave none of the mutually adjacent territory for subsequent annexation. The result of the ordinance in the Magnolia Park case, had it been upheld, would have been *to destroy the constitutionally guaranteed right of the City of*

*Magnolia Park to govern itself.* The right of West University Place to govern itself remains unimpaired, regardless of the fact no territory adjacent thereto remains for its further territorial expansion. No question was involved in the Magnolia Park case of the right of absorption by one municipality of all of the territory mutually adjacent to it and another municipality of equal dignity. That is the question presented here.

The territory in question in the present case is unappropriated territory, such as was involved in the recent case of State ex rel Binz et al v. City of San Antonio, 147 S. W. (2d) 551. The territory in that case was unincorporated but was subject to incorporation by the citizens residing therein. It was also subject to annexation by the City of San Antonio, since that city was a home rule city and the territory was adjacent thereto. The pertinent facts are that while the city's proceedings annexing the territory were in process the 2,200 citizens of the identical territory, through the requisite number thereof as petitioners, began proceedings looking to its incorporation into a separate municipality under the name of Olmos Terrace. The proceedings to incorporate were in process in accordance with applicable statutory provisions, the citizens had voted favorably upon the proposal and the County judge had entered an order declaring the town of Olmos Terrace duly incorporated,— all before the annexation proceedings of the City of San Antonio had been consummated. The Court of Civil Appeals upheld the prior right of San Antonio to annex the territory. The doctrine of such prior jurisdictional right is well established. McQuillin on Municipal Corporations, 2nd Ed., Vol. 1 (Revised), sec. 2, p. 476; State ex rel George v. Baker et al (Com. App.), 120 Texas 307, 40 S. W. (2d) 41. The Court further declared ineffective and void the attempt of the resident citizens of the territory to incorporate. This Court refused the application of the relators for a writ of error, thus upholding the City of San Antonio's right (as a home rule city) to annex its adjacent territory, as against the right of the citizens of the identical territory to incorporate it as a separate municipality. For reasons fully as compelling as in the Binz case we uphold petitioner's right in the present case to annex its adjacent territory.

■ It is contended by West University Place, in effect, that since the annexation of the territory, if upheld, will be to so circumscribe it territorially that it cannot thereafter expand its boundaries, the annexation ordinance should be declared void on the ground that such was the purpose of the City of Houston's governing body in enacting the ordinance rather than

a purpose to serve the city's municipal needs. We overrule this contention.

The folliwing holdings of the Court of Civil Appeals made at the outset of its opinion in the present case answer this contention:

"Now the power of a Home Rule City to fix its boundaries is the power to legislate. Prior to the adoption of the Home Rule Amendment to the State Constitution, the Legislature could fix or alter the boundaries of an incorporated city and it was held in Graham v. Greenville, 67 Texas 621, 2 S. W. 742, that such power was not restricted by the State Constitution. The Home Rule Amendment took this legislative power from the legislature and conferred it upon cities which adopted a Home Rule Charter. Of course, in altering their boundaries cities must observe the procedure prescribed by the enabling act. See Note in 64 A. L. R., 1341; Steinhagen v. Eastham, 233 S. W. 660, 111 Texas 597, 243 S. W. 457; Hunt v. Atkinson, 17 S. W. (2d) 780, 18 S. W. (2d) 594. *This power of a Home Rule City to annex territory, being legislative power, is therefore not subject to being revised by the judicial power of the courts.* See City of Gladewater v. State (Com. App.) 138 Texas 173, 157 S. W. (2d) 641; State v. City of Waxahachie, 81 Texas 626, 17 S. W. 348; Norris v. City of Waco, 57 Texas 635."

The authorities cited by the Court sustain its conclusion (italicised above) and we approve it. The Court in overruling the City of Houston's motion for rehearing made more obvious the correctness of such a conclusion by stating that it had no way of determining "just what part of the territory less than the whole of what the city had attempted to annex the governing body would wish to incorporate within the city limits," pointing out that only the governing body could determine this since it involved the exercise of legislative powers, and citing County School Trustees v. District Trustees, 137 Texas 125, 153 S. W. (2d) 434.

The City of West University Place is a small city (comparatively speaking), predominantly residential in character, adjoining the City of Houston. The Court of Civil Appeals in its opinion calls attention to the fact that Houston has developed into an industrial city. We quote:

"In 1850 its population was less than 2400, in 1900 its inhabitants exceeded 44,000; in 1910 they exceeded 75,000; in 1920 they exceeded 138,000; in 1930 they exceeded 292,000; in

1940 they equaled 384,514. The figures given apply only to persons residing within the corporate limits of Houston. J. V. Goodwin testified that Houston population residing within its corporation limits is now increasing more rapidly than any other industrial city in the United States,—at the rate of 40,000 a year."

We cannot say in the light of the record that the action of the governing body of the City of Houston in absorbing within its boundaries the territory in question, even though it resulted in encircling the respondent city, was so unrelated to petitioner's economic and municipal needs as to be wholly unreasonable and arbitrary and for that reason subject to judicial review. Such action invaded none of the property or constitutional rights of respondents. 37 Amer. Jur.—Municipal Corporations—sec. 29.

It cannot be validly questioned that the power of home rule cities to extend their boundary limits is subject to such further limitations consistent with the Home Rule Amendment as the legislature may prescribe. Art. 11, sec. 5, supra; Hunt v. Atkinson (Com. App.), 18 S. W. (2d) 594; Dry v. Davidson (wr. ref.), 115 S. W. (2d) 689; McGuire v. City of Dallas, 141 Texas 170, 170 S. W. (2d) 722. Their present power in this regard, so far as legislative action is concerned, is limited only by the requirement that the territory to be used for that purpose must be adjacent to such municipality. As pointed out in State v. City of Waxahachie, 81 Texas 626, 17 S. W. 348, if any reasons exist for further limitations they should be addressed to the legislature.

We reverse the judgment of the Court of Civil Appeals, which affirms that of the trial court, and render judgment in favor of petitioner declaring valid its ordinance annexing the territory in question.

Opinion adopted by the Supreme Court December 1, 1943.

Rehearing overruled February 2, 1944.