**STATE ex rel. WINN et al. v. CITY OF SAN ANTONIO et al.**

No. 12571.

Court of Civil Appeals of Texas.
San Antonio.

May 27, 1953.

Rehearing Denied June 17, 1953.

Dibrell, Gardner, Dotson & Graham, Austin F. Anderson, Dist. Atty., San Antonio, for appellants.

Harvey L. Hardy, City Atty., G. Bert Smith, Jr., San Antonio, for appellees.

PER CURIAM.

This is an action in the nature of quo warranto brought under the provisions of Article 6253 et seq., Vernon's Ann.Tex. Stats., by the State of Texas acting upon the relation of Murray Winn, Jr., and others, claiming to be the duly elected and qualified officials of the Town of Coker Estates, purportedly organized under Title 28, Chapter 11, Articles 1133 et seq., Vernon's Ann.Tex.Stats. The State, represent-

ed by the Criminal District Attorney of Bexar County, contended that certain annexation ordinances and proceedings of the City of San Antonio were invalid and that the City was wrongfully asserting authority over territory lying within a legally organized municipality known as the Town of Coker Estates. Judgment was rendered for the City upon a motion for summary judgment supported by affidavits. Rule 166–A, Texas Rules of Civil Procedure. The State of Texas and the relators have appealed. Upon proper motion and by reason of the nature of the case, the submission of this appeal has been advanced upon the docket.

Appellants present a total of eighteen points which assert three main contentions: First, that the initial ordinance of the annexation proceedings was void as it included within the description of the territory sought to be added to the City certain lands not legally subject to annexation; Second, that the annexation ordinances were void in that they had not been published in a *daily* paper, as required by the City Charter, and Third, that the action of the governing body of the City of San Antonio in adopting the annexation ordinance was capricious and arbitrary and hence void.

The City of San Antonio is a Home Rule City operating under the provisions of Article 11, § 5, of the Texas Constitution, Vernon's Ann.St., and Title 28, Chapter 13, Article 1165 et seq., Vernon's Ann.Civ. Tex.Stats. Article 1175, § 2, expressly provides that a home rule city may exercise, "The power to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, according to such rules as may be provided by said charter."

Acting under the constitutional and legislative grants of authority above referred to, the City of San Antonio adopted the following Charter provision:

"The City shall have power, by ordinance, to fix and change the bounds and limits of the City and to provide for the extension of the said bounds and limits and the annexation of addi-

tional territory lying adjacent to the City with or without the consent of the territory and the inhabitants thereof annexed; provided, however, that upon introduction of such an ordinance, or any amendment thereto, it shall be published one time, prior to its final passage, in some daily newspaper published in the City and such ordinance shall not be thereafter finally passed until at least 30 days have elapsed after publication. The City shall likewise have power to annex additional territory, lying adjacent to the City, and the inhabitants thereof, as may be authorized by, and in the manner and form prescribed by any general law of Texas." Section 3, Paragraph 2, of the Charter of the City of San Antonio.

The actions of the City of San Antonio and the purported village known as the Town of Coker Estates with reference to the territory in question all took place in 1952. Stated in chronological order, they were as follows:

On March 12th, the governing body of the City of San Antonio adopted a preliminary ordinance purporting to annex approximately 120.04 square miles of additional territory to the City. In accordance with the provisions of the City Charter relating to the adoption of legislative enactments of this character, the ordinance provided that:

"After the introduction of this ordinance, and after it has been amended as desired by the City Council of the City of San Antonio, for final passage, it shall be published in the 'Commercial Recorder', in the City of San Antonio, one time; and shall not be passed finally thereafter until at least thirty days have elapsed after said publication."

On April 7th the County Judge of Bexar County canvassed the returns of an election held on April 5th and entered an order setting out the boundaries of the Town of Coker Estates and declared the same duly incorporated under the provisions of Title 28, Ch. 11, Vernon's Ann.Civ.Stats.

On July 31st, the Council of the City of San Antonio passed a second ordinance amending the ordinance of March 12th and reducing the territory to be annexed to 79.74 square miles and making certain other changes hereinafter noted. This amending ordinance was likewise ordered published in the Commercial Recorder.

On September 25th, the City Council of the City of San Antonio passed and adopted the ordinance as amended.

■ The rule of law applicable to the situation is stated by the Supreme Court in Beyer v. Templeton, 147 Tex. 94, 212 S.W.2d 134, 138, as follows:

"In the event a municipal corporation seeks to annex adjacent territory, and the residents thereof seek to incorporate as a separate municipal corporation, the rule in this State is that *whoever first commences legal proceedings asserting authority over the territory in question thereby acquires jurisdiction over same*, and this jurisdiction cannot be defeated thereafter by the adverse party's subsequently attempting to exercise jurisdiction. State ex rel. George v. Baker, 120 Tex. 307, 40 S.W.2d 41; State ex rel. Binz v. City of San Antonio, Tex.Civ.App., 147 S.W.2d 551, writ of error refused; City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928." (Italics ours.)

Appellants contend that the San Antonio ordinance of March 12th was wholly void, and for that reason the City did not first assert authority over the disputed territory, but that the Town of Coker Estates acquired jurisdiction thereof by reason of its April incorporation. The determination of the priority of these conflicting jurisdictional claims depends upon whether or not the ordinance of March 12th can be properly regarded as an assertion of authority over the territory in question. Appellants say that this ordinance is wholly nugatory because, (a) there is an ambiguity in the field notes setting out the western boundary of the territory purportedly covered by the ordinance; (b) the territory described includes military reservations

owned by the United States Government, and (c) the territory described also includes two incorporated towns, namely, Balcones Heights and Castle Hills. The last ground stated is particularly emphasized by appellants.

To our mind all these contentions are effectually answered by the amending ordinance of July 31st, wherein a lesser territory and, consequently, new and different boundaries are set out, and it was expressly declared that, "The aforesaid boundary and limits shall include the territory over which the City of San Antonio has jurisdiction; provided, however, that there is no intent nor has there ever been any intent to include within the area annexed by this ordinance, any municipality lawfully incorporated under Title 28 of the Revised Civil Statutes of Texas of 1925, prior to the 12th day of March, 1952." The contention as to military reservations seems fully answered by the decision of the Supreme Court in City of Wichita Falls v. Bowen, 143 Tex. 45, 182 S.W. 695, 154 A.L.R. 1434.

It is undisputed that the territory described in the County Judge's order of April 7th, relating to the Town of Coker Estates, lies within the boundaries of the territory described in all three ordinances of the City of San Antonio, adopted on March 12th, July 31st and September 25th, respectively. The passage of the first ordinance was an *assertion of authority* over such territory. This ordinance was not void but, on the contrary, was subject to amendment. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762; 5 McQuillen on Municipal Corporations (3rd Ed.) 337. By the amended ordinance of July 31st and the final ordinance of September 25th, the City continued to assert jurisdiction over the disputed territory.

We do not mean to hold inferentially that the ordinance of March 12th included territory within the incorporated towns of Balcones Heights and Castle Hills. It is argued at length by the City that such ordinance did not and was not intended to apply to such corporations but only to such territory as was subject to the jurisdiction of the City of San Antonio for annexation purposes. We need not, however, discuss the matter in view of our holding above set out, for if the ordinance be construed as including the two incorporated towns mentioned it would not be ineffective as an assertion of authority over the territory sought to be incorporated into the Town of Coker Estates.

Appellants rely upon such cases as Stewart v. Adams, 50 Kan. 560, 32 P. 122; Sharkey v. City of Butte, 52 Mont. 16, 155 P. 266; and Zweifel v. City of Milwaukee, 188 Wis. 358, 206 N.W. 215. These authorities are not deemed in point. We are here concerned with the efficacy of the ordinance of March 12th as an *assertion of authority* over the territory embraced within the purported Town of Coker Estates and not with the hypothetical question of whether or not a final ordinance in the terms of the preliminary ordinance of March 12th would have been valid. No such final ordinance was ever passed, but, on the contrary, the preliminary ordinance of March 12th was legally amended and the intentions of the annexing authority made entirely clear as to the extent of the territory sought to be added to the City. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, supra. (For a statement of the rule applicable in determining the validity of a part of a final ordinance after the invalid portion thereof has been stricken, see the cited case of Stewart v. Adams, 50 Kan. 560, 32 P. 122.) As we understand the decision of City of Port Arthur v. Gaskin, Tex.Civ.App., 107 S.W.2d 610, it does not support appellants' position, but simply holds that a city may not annex territory which is not adjacent to its then existing territorial boundaries. Article 1175, § 2, Vernon's Ann.Tex.Stats. See also, the connected case of Town of Griffing Park v. City of Port Arthur, Tex.Civ.App., 36 S.W. 2d 593.

We likewise overrule appellants' contention that the "Commercial Recorder" wherein the ordinances of March 12th and July 31st were published was not a "daily newspaper" within the meaning of that

term as used in the City Charter. In support of the motion for summary judgment, the City filed an affidavit by H. L. Miskimin who, with his wife, is the sole owner of the "Commercial Recorder." The State filed a motion to strike this affidavit (which was properly overruled by the trial judge) but did not controvert the same in any way. It therefore appears undisputed (as stated in the affidavit) that, "The 'Commercial Recorder' is printed and published daily, except for Saturdays, Sundays, and Legal Holidays. In other words, it is printed daily every day, Monday through Friday of every week, with issues omitted only on Legal Holidays falling on week days."

The uncontroverted affidavit also states that the "Commercial Recorder" under its present name or the name of "Commercial Recorder and Daily Bulletin," has been published continuously in the City of San Antonio since 1896. Copies of a number of issues of the paper were attached to the affidavit to show the nature of the publication. These copies indicate that out of a total of 28 columns printed on four pages, approximately 20 columns are devoted to matters of general interest, court calendars and advertising, while about eight columns are devoted to the publication of legal notices.

The "Commercial Recorder" is a newspaper. City of Corpus Christi v. Jones, Tex.Civ.App., 144 S.W.2d 388; Hall v. City of Milwaukee, 115 Wis. 479, 91 N.W. 998; Culclasure v. Consolidated Bond & Mortgage Co., 94 Fla. 764, 114 So. 540; Annotation, 68 A.L.R. 542. It was likewise a *daily* newspaper. In 39 Am.Jur. 4, Newspapers and Press Associations, § 4, it is stated that:

"The term 'daily newspaper' in its popular sense means a paper which, according to its usual custom, is published every day of the week except one, for instance, Sunday or Monday, or which is published every day in the week except both Sunday and Monday. Thus, it has been held that a newspaper which is printed and published five days in each week is a daily newspaper within the meaning of a provision requiring all legal advertisements to be published in a daily newspaper."

Likewise, in Daniel, Texas Publication Laws, p. 10, it is said that:

"A few statutes specifically require that publication shall be accomplished in a 'daily newspaper.' The question then arises as to what constitutes a 'daily newspaper.' It is generally held that the term 'daily newspaper,' when used in connection with legal publication statutes, includes those newspapers which are published either every day of the week, or every day except one, for instance, Sunday or Monday, or every day in the week except both Sunday and Monday."

See also, Fairhaven Publishing Co. v. City of Bellingham, 51 Wash. 108, 98 P. 97.

The fact that the "Commercial Recorder" was not published on holidays did not prevent it from being a daily newspaper. Puget Sound Publishing Co. v. Times Printing Co., 33 Wash. 551, 74 P. 802; Wilson v. Petzold, 116 Ky. 873, 76 S.W. 1093.

We next consider appellants' contention that the action of the governing body of the City of San Antonio was unreasonable and arbitrary and hence void. Appellants alleged generally in their petition filed in the lower court, that the ordinance of March 12th embraced within its description of the territory sought to be annexed "thousands of acres of agricultural and grazing lands which the City Council of the City of San Antonio well knew, or upon the slightest investigation could have determined, was totally unsuited for city purposes or urban development." It is then alleged that "after mature deliberation and reflection, said City Council of the City of San Antonio recognized the unreasonableness, arbitrariness and capriciousness of said purported ordinance passed on March 12, 1952, and thereafter reconsidered their action and passed the annexation ordinance of September 25, 1952, which said last mentioned ordinance embraces much less territory than did the purported act of March 12, 1952, the difference being approximately 26,000 acres or 41 square miles of territory which was included in the purported ordinance of March 12, 1952,

but which was not included in the ordinance of September 25, 1952."

Here, again, appellants in accordance with their position maintained throughout this litigation, put forward the contention that the ordinance of March 12th was wholly void. Our holding that such ordinance was effective as an assertion of authority and that the same was subject to amendment, in effect disposes of the present contention. If it be true, as alleged, that certain lands unsuitable for urban purposes were included in the ordinance of March 12th, then it appears that the ordinance was thereafter legally amended. It has been held that the question of what territory should be included within a proposed annexation is one primarily for legislative determination. Norris v. City of Waco, 57 Tex. 635; State v. City of Waxahachie, 81 Tex. 626, 17 S.W. 348; City of Gladewater v. State, 138 Tex. 173, 157 S.W.2d 641; City of Houston v. State, 142 Tex. 190, 176 S.W.2d 928. Subject to the statutory restriction that the territory to be annexed must be adjacent to the existing city limits, Article 1175, § 2, this legislative power is vested with the governing body of a home rule city and it is sufficient to the purposes of this case to say that under the authorities cited, the trial court was correct in holding that no genuine issue of fact was presented upon the issue of arbitrary action.

All of appellants' points of error have been considered. In our opinion none of them presents a reversible error and the judgment appealed from is accordingly affirmed.