**CITY OF EL PASO et al., Appellants,**

**v.**

**Mrs. John E. TUCK et al., Appellees.**

**No. 5116.**

Court of Civil Appeals of Texas.

El Paso.

June 24, 1955.

Rehearing Denied July 20, 1955.

H. E. Brockmoller, Asst. City Atty., Travis White, City Atty., El Paso, for appellants.

Burges, Scott, Rasberry & Hulse, J. F. Hulse, Louis A. Scott, El Paso, for appellees.

PER CURIAM.

This is an appeal by the City of El Paso from a judgment of the 41st District Court of El Paso County, holding that appellees

Mrs. John E. Tuck et al. were entitled to have an election called to decide whether or not the inhabitants of an area adjacent to the City of El Paso wished to incorporate the said area into a city; that a petition filed for that purpose—alleged by appellants to have been abandoned—on March 19, 1953, was in sufficient force and effect so as to give appellees priority of jurisdiction over the areas. The trial court denied appellees' petition for mandamus to compel the county judge to call such election.

The trial court filed findings of fact and conclusions of law substantially as follows:

That shortly before January 23, 1953, the City of El Paso had annexed Ascarate, which was part of the Ysleta Independent School District. Fear of further reduction in the territory of the Ysleta Independent School District was a factor in forcing the filing of a petition to incorporate the City of Ysleta on or about January 23, 1953. After the election date was set the leaders of the incorporation movement wanted the election postponed and among other reasons therefor was the enactment by the 1953 Legislature of House Bill 129, appearing in Vernon's Ann.Civil Statutes as an amendment to Art. 2804a. The aforesaid amendment had been the law under which the City of El Paso expanded its boundaries. That the Independent School District of the City of El Paso was also expanded therewith, and in the case of the annexation of Ascarate part of the Ysleta school district had been cut off and put into the El Paso district. The amendment to said Art. 2804a had the effect of preventing any further disturbance of adjoining school districts by extension of the City of El Paso's boundaries. On advice of counsel that an election on incorporation could not be postponed except through a petition to the County Judge to cancel, such a petition was presented and the County Judge did sign an order purporting to cancel the election called in pursuance to the petition filed on January 23, 1953, and immediately thereafter a new petition to incorporate the City of Ysleta was filed March 19, 1953, and the election set for May 16, 1953; that the City Council on May 7, 1953, while in conference with some of the leaders of the incorporation movement in Ysleta, passed a resolution, which was:

"Motion made, seconded and carried that there be spread upon the minutes a statement that this City Council has no plans or intentions for further annexation of the Lower Valley at this time."

That while it was not clear what the Mayor and Council and said leaders from Ysleta understood the resolution to mean, the Council did not promise not to annex the territory comprising Ysleta during the term of office of said Mayor and Council; that thereafter, on May 9, 1953, a petition signed by approximately forty-six of the original signers of the petition for incorporation, asking the County Judge to cancel the order for election which had been set for May 16th was duly filed, and pursuant to said petition the County Judge did cancel said election order, and no such election was held; that thereafter, on November 18, 1954, the City Council of the City of El Paso introduced ordinance No. 1285 which provided for the annexation of territory which includes the territory described in the petition filed with the County Judge on March 19, 1953; such ordinance was ordered published and was published on November 20, 1954, and republished November 23, 1954. A second ordinance, No. 1301, was introduced at a meeting of the City Council of the City of El Paso on December 23, 1954. Said ordinance was thereafter published, on December 28, 1954. This ordinance was for annexation of practically the same territory as described in the above ordinance except that it did not extend as far east of Ysleta as the territory described in the prior ordinance. On December 8, 1954, an instrument denominated as a supplemental petition, signed by sixty-nine qualified voters living in the territory described in the petition that was filed with the County Judge on March 19, 1953, was presented to the County Judge, asking that he set an election pursuant to the petition theretofore filed on March 19, 1953; that on December 11, 1954, said County Judge refused to call

such an election, saying that the introduction by the City Council on November 18, 1954, of Ordinance No. 1285 had given the City of El Paso prior and exclusive jurisdiction over said territory; that the County Judge by such refusal did not act fraudulently or arbitrarily, but that he did act erroneously upon his bona fide opinion based upon the facts before him at that time; that the area included in the proposed annexation ordinances Nos. 1285 and 1301 was a territory generally urban in character, and suitable and proper for annexation to the City of El Paso; that said ordinances would be valid if the prior assertion of authority over such territory filed in a petition for incorporation of the City of Ysleta on March 19, 1953, was not pending and existing on November 18, 1954; that said proceedings filed on March 19, 1953, had not been abandoned. The trial court further found that there is no lack of due process to the inhabitants of said territory in question, sought to be annexed pursuant to decisions by the Supreme Court of Texas, or of equal protection of the law under either the Constitution of the State of Texas, art. 1, § 3, or under the Constitution of the United States of America, Amendment 14, as asserted in plaintiffs' petition.

Except for the constitutional question raised by appellees the principal question involved in this appeal is whether or not the action of the County Judge in refusing to call the election in the absence of his acting fraudulently or arbitrarily is subject to review by either the District Court or the Appellate Courts.

Appellants' Fourth point asserts that the trial court erred in finding that the March 19, 1953, petition had not been abandoned and was still in full force and effect because the County Judge had held to the contrary, and his decision not being arbitrary or fraudulent is not subject to review.

In passing on the December 8, 1954, petition seeking an election by virtue of the petition filed March 19, 1953, the County Judge refused to call such an election, stating that the city had acquired exclusive jurisdiction over the territory in question, giving as his reasons that the election called for May 16, 1953, pursuant to said March 19th petition, had been cancelled at the request of the petitioners, and the election never held, and that no further orders had been entered and none were pending at the time the City of El Paso had begun its annexation proceedings.

There seems to be a general rule of law that

"In passing on petitions for elections and in deciding whether or not to call an election, the officer with whom such a petition is filed performs a judicial and not a ministerial function." 29 C.J.S., Elections, § 69, p. 92.

In the case of State ex rel. Burkett v. Town of Clyde, Tex.Civ.App., 18 S.W.2d 202 (error refused), the County Judge ordered an incorporation election under a statute requiring more than 500 inhabitants. The incorporation was attacked by quo warranto on the grounds that there were less than 500 inhabitants in the territory when the election was ordered. The trial court sustained a general demurrer to the quo warranto petition. The Court of Civil Appeals affirmed the trial court's judgment, saying:

"The duty thus imposed upon the county judge was one of a judicial nature, and the law provided no right to have his decision revised and no procedure for doing so. State v. Goodwin, 69 Tex. 55, 5 S.W. 678. Any judicial action involves the possibility of error. In the absence of a right of appeal or some other method of revision, the courts are powerless to correct error in such action. Applying the principle to the case in hand, we think the proper interpretation of the authorities warrants the conclusion that appellant, by the allegations of its petition, showed no right to have the court determine that there were not more than 500 inhabitants in the territory in question when the election was ordered. State v. Goodwin, 69 Tex. 55, 5 S.W. 678; Scarborough v. Eubank,

93 Tex. 106, 53 S.W. 573; Word v. Schow, 29 Tex.Civ.App. 120, 68 S.W. 192; State v. Larkin, 41 Tex.Civ.App. 253, 90 S.W. 912; Thompson v. State, 23 Tex.Civ.App. 370, 56 S.W. 603.

"The question naturally arises: Can the county judge, by ordering an election where there are fewer than the requisite number of inhabitants, thus set at naught the law with the effect that redress will be denied to every one aggrieved by such action? The test of the validity of such action, we think, is good faith on the part of the officer thus charged with the duty. The action of the officer is at all times supported by a presumption that he did what it was his duty to do. If the judge orders such an election, knowing or having good reason to believe that there does not exist the requisite number of inhabitants, his act in doing so would, no doubt, be held to be fraudulent. Unquestionably the law will relieve from the effects of fraud. But even in such case the fraud sufficient to invalidate his action must be such as is chargeable to the officer and not merely fraud of others by which the officer is led into error. Word v. Schow, 29 Tex.Civ.App. 120, 68 S.W. 192." 18 S.W.2d 203.

This rule has long been in effect, as is well grounded and illustrated by Chief Justice Gaines of our Supreme Court in the Scarborough v. Eubank case, supra, decided in 1899, wherein he cites State v. Goodwin, supra, as holding that the court has no right to set aside the finding of the County Judge on an allegation that he erroneously found that the city contained the requisite number of inhabitants, and stating that the action of the County Judge was not subject to review.

The statute under which the territory known as Ysleta seeks to incorporate empowers the County Judge to act upon petitions presented to him for elections, and his findings on the matters involved are final unless he acts fraudulently or arbitrarily. The trial court found the County Judge in the instant case did not act fraudulently or arbitrarily, but acted erroneously on the facts before him. While the County Judge did not use the words in his findings that the people of Ysleta had abandoned incorporation proceedings, the effect of his holding was that such proceedings had been abandoned and therefore the City of El Paso's proceedings to annex were prior in time. The trial court and this court are without power to set aside the findings of the County Judge in this case. The County Judge who refused to call the election on the petition filed December 8, 1954, was the same Judge before whom the first petitions were filed January 23, 1953, and who called an election pursuant to that petition, and who cancelled said election at the request of the petitioners who had filed the original petition asking for an election. It was the same Judge before whom the petition of March 19, 1953, was filed, and who called an election for May 16th pursuant to such petition, and thereafter cancelled said order of election at the request of a large majority of the same petitioners who had signed the petition of March 19, 1953. The Judge himself was in excellent position to know whether or not the proceedings for incorporation had been abondoned, and whether or not he had lost jurisdiction of the matter by the City Council of El Paso having introduced the ordinance of November 18, 1954. The County Judge has shown by his actions that far from acting arbitrarily he has granted every wish of those interested in incorporation, cooperating with them to the fullest extent so far as he could, as long as he considered he had jurisdiction.

The courts have held that in a situation involving a conflict between a city desiring to annex adjacent territory and the inhabitants thereof, the first to take effective action shall prevail. In other words, if the ordinance of the city annexing the territory is first passed, then the city shall have jurisdiction, conversely if the inhabitants of the territory involved file a legal petition with the County Judge seeking to incorporate, then that action takes precedence and the city cannot annex. As was said in a recent

decision, the filing of the petition creates a city in embryo. City of El Paso v. State (Ascarate), Tex.Civ.App., 209 S.W.2d 989; Beyer v. Templeton, Tex.Civ.App., 208 S. W.2d 692, affirmed 147 Tex. 94, 212 S.W.2d 134; State ex rel. George v. Baker, 120 Tex. 307, 40 S.W.2d 41.

So it appears that the County Judge, on the presentation of the December 8, 1954, petition, was confronted with a question of jurisdiction which he had to resolve by deciding a question of fact, namely, had the people of the territory abandoned their effort to incorporate, thus cancelling or rendering ineffective their March 19, 1953, petition calling for an election on the matter of incorporation? If this was so then the city by virtue of its ordinance passed in 1954 would have acquired exclusive jurisdiction of the territory. His ruling or holding indicates that he so found, and that therefore he had no jurisdiction to order the election. The trial court found that he had not acted arbitrarily or fraudulently. In fact, there was never any allegation by anyone nor any evidence that he had. Therefore, on the basis of the authorities cited and quoted above it seems clear that this finding of abandonment by the County Judge, implied though it may be, is not subject to review in the absence of fraud or arbitrary action. This means that, like the District Court, we here do not have authority to review or pass on the correctness of the County Judge's finding that abandonment had taken place as a matter of fact. We therefore sustain appellants' fourth point.

 Appellants have briefed a total of six points, but it is thought that our disposition of its fourth point is sufficient to dispose of the matter before us without discussion or disposition of appellants' other points.

Appellee, by Cross-Point of Error, raises a question of the constitutionality of the city's ordinances annexing the involved territory, on the ground that they violate the due process clauses of both State and U. S. Constitution. The constitutional question thus raised in this case deals with the right of the city to annex territory beyond its borders without the consent of the inhabitants. There has arisen a very natural resentment on the part of many groups of people around many cities, as they feel that they are being annexed without the right of voting, a right that has been inherent in American people since the inception of this republic. This is a very natural reaction, and one that has caused much unfortunate misunderstanding. The state of the law in Texas now permits this to be done, and such condition has undoubtedly caused many groups of people and many cities to take precipitate action, when in truth and in fact in some cases the people have not been ready, nor has the city been ready, but each has acted in order to protect what he felt was his just rights.

This court is well aware of this situation, both here in this county and in other parts of the state, as evidenced by the cases on record dealing with this problem. We, however, are constrained and are obliged to follow the rulings of the Supreme Court of the State of Texas, which court has passed on this question to the effect that the cities do have the right to annex adjoining territories without the consent of the people to be annexed. We have no choice but to follow these rulings that have been laid down by our state Supreme Court. While it is thought by many that the statutes and laws appear to be inadequate, both as to accomplishing the desired results and protecting the rights of the people involved in such situations as we have in this case, the remedy, if any, it appears must be had through our Legislature. We therefore sustain the trial Court's action in overruling appellees' points raising the constitutional question of lack of due process of law. Dallas County Water Control and Imp. Dist. v. City of Dallas, 149 Tex. 362, 233 S.W.2d 291, certiorari denied, 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686; City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928, appeal dismissed, State of Texas ex rel. City of West University Place v. City of Houston, 322 U.S. 711, 64 S.Ct. 1159, 88 L.Ed. 1554; Allen v. City of Austin, Tex. Civ.App., 116 S.W.2d 468, error refused.

It is the duty of this court to follow the decisions already rendered by our state Supreme Court on the question.

Appellees' cross-points 1 and 3 are overruled without discussion.

The judgment of the trial court, insofar as it decrees that the petition of relators and plaintiffs filed March 19, 1953, with the County Judge is still in force and effect, and is prior in jurisdiction to that asserted by the City of El Paso, and that relators are entitled to have the County Judge call an election, is reversed and rendered, and the judgment of the Court in all other matters is affirmed.

Affirmed in part; reversed and rendered in part.