**CITY OF PASADENA, Appellant,**

**v.**

**The STATE of Texas ex rel. CITY OF HOUSTON et al., Appellees.**

**No. 15048.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Nov. 9, 1967.

Rehearing Denied May 9, 1968.

Second Rehearing Denied May 31, 1968.

Charles A. Easterling, Houston, James R. Riggs, Pasadena, for appellant.

Joe G. Resweber, County Atty., Billy R. Kerr, First Asst. County Atty., Will Sears, Houston, for appellee City of Houston.

Frank L. Heard, Houston, for appellees Humble Oil & Refining Co., Friendswood Development Co. and Red Bluff Development Co.

BELL, Chief Justice.

This is a case in which the trial court sustained a motion for summary judgment in favor of the State of Texas holding certain ordinances of the City of Pasadena invalid and ousting it from the territory described in said ordinances. The same judgment held valid certain ordinances of the City of Houston which had been attacked by the City of Pasadena in its answer to the quo warranto proceeding instituted by the State, and held that the territory described in such ordinance was validity within the limits of the City of Houston.

This appeal grew out of a quo warranto proceeding filed by the State of Texas on the relation of the City of Houston Octo-

ber 14, 1965 in the 61st District Court of Harris County, being Cause No. 684,547. The petition was subsequently amended, in which additional relators were named, and trial was had on the amended petition. We notice the number of the present suit because prior to June, 1962 two other suits had been filed and disposed of between Pasadena and Houston that will be discussed because they involved some of the ordinances of both cities that we will refer to in our opinion, and the judgments rendered in those causes are material to the disposition of this appeal.

The first of the prior suits was a quo warranto proceeding instituted by the State, on the relation of the City of Houston et al. against the City of Pasadena in the 55th District Court and was numbered 571,595. The second was instituted by the State on relation of the City of Pasadena against the City of Houston in the 129th District Court and was numbered 594,632. Judgments were rendered in both of these causes on June 22, 1962, upon the agreement of the parties thereto.

Because of the lengthy description in the ordinances and judgments involved, we are making a diagram a part hereof to demonstrate the areas encompassed in the various ordinances and judgments.

The following are the material ordinances passed in 1960 that were involved in Causes Nos. 571,595 and 594,632, in which agreed judgments were rendered on June 22, 1962:

1. On June 6, 1960, Pasadena passed on first reading Ordinance No. 1449 and passed it on second and final reading December 27, 1960. The ordinance described the territory shown on the diagram by parallel lines running northeast-southwest and lying north of Genoa-Red Bluff Road. We have placed in this area the number "1449" and the name "Pasadena". Proceeding from the southwest corner of this tract it gave calls running generally southwest to a point on our diagram that we have marked with the letter "A". The calls proceed to A, following substantially the path we have at intervals marked 1449 along the lower part of the shaded or closely dotted area. The long meandering line continues from point A substantially along the line marked B, C, D, E, F, G, H and I. The point I would represent the southeast corner we have designated with the parallel lines. This long meandering line would be the west, south and east boundary of the area purported to be annexed to Pasadena by Ordinance 1449, that lies south of the north line of Genoa-Red Bluff Road.

2. On June 22, 1960, the City of Houston passed on first reading Ordinance No. 60–989, annexing all territory lying in Harris County not already in the City of Houston or not validly incorporated in some other city.

After Ordinance 1449 was passed on second and final reading in December, 1960, the State of Texas, on the relation of the City of Houston and numerous individuals, filed a quo warranto proceeding in the 55th District Court of Harris County, against the City of Pasadena and the City of La Porte, it being numbered 571,595. The suit sought to oust Pasadena from certain extensive territory covered by Ordinance 1449 that had by earlier City of Houston ordinances become a part of Houston. The validity of the ordinance was also attacked because of defective description. While the City of La Porte was a respondent, the adjudication in that case as to La Porte is not material to the disposition of this controversy. The petition specifically put in issue the validity of Pasadena Ordinance No. 1449 and Houston Ordinance No. 60–989. Other Houston ordinances were alleged as having been passed several years earlier preempting territory by Houston and that part of such territory was entrenched upon by Pasadena Ordinance 1449, for which additional reason the latter ordinance was invalid. We need not specifically notice them, but mention them generally only to show that there were various issues between the parties which created uncertainty of the outcome of the suit as made by the petition in Cause No. 571,595 and Pasadena's answer thereto which probably led to the agreed judgment of June 22, 1962. Houston was asserting the validity of Ordinance No. 60–989 and claiming it had by such ordinance preempted the territory involved in this case. In its answer to the petition in Cause No. 571,595, Pasadena attacked various ordinances passed by Houston and specifically attacked the validity of No. 60–989 that encompassed the territory involved in this case.

On May 18, 1962, the State of Texas, on relation of the City of Pasadena and the City of La Porte, was granted leave to file a quo warranto proceeding against the City of Houston. It was filed in the 61st District Court and was numbered 594,632. This petition attacked the validity of various Houston annexing ordinances, including No. 60–989. This was really a countersuit, though not in form a counterclaim or cross-action to Cause No. 571,595. It asserted entrenchment upon territory previously annexed by Pasadena. In the prayer it asked specifically for a declaration of the invalidity of Ordinance No. 60–989.

On June 19, 1962, the City of Pasadena passed Ordinance No. 1530 expressly authorizing the rendition and entry of the judgments that were finally rendered and entered in Causes Nos. 571,595 and 594,632. On June 20, 1962, by Ordinance No. 62–886, the City of Houston gave the same authority to its counsel.

On June 22, 1962, in Cause No. 571,595, final judgment was rendered and entered in the 55th District Court. This judgment made these significant adjudications:

1. That Pasadena was ousted from any jurisdiction or assumed jurisdiction over all territory described in Ordinance 1449 except the territory described in paragraph I of the judgment. The described area held to be lawfully annexed by Pasadena is substantially that lying north of the north line of Genoa-Red Bluff Road and represented on our diagram by the area marked "Pasadena" and also shown by diagonally drawn parallel lines. The description fixes the north line of Genoa-Red Bluff Road as the south city limit of Pasadena.

2. Ordinance 60–989 of the City of Houston, passed and adopted on first reading June 22, 1960, was expressly declared to have been validly introduced and passed on such date and that Houston thereby validly extended, claimed to extend, and at the time of judgment still claimed annexation jurisdiction over all territory in Harris County not theretofore in the City of Houston or not theretofore validly contained in some other city, town or village. It was adjudicated that by virtue of such annexation jurisdiction established in the City of Houston by Ordinance 60–989 all of the territory described in Pasadena Ordinance No. 1449, except that described immediately above in adjudication I, was validly preempted and claimed by Houston on June 22, 1960, and had been since that time and was at the time of judgment within the exclusive annexation jurisdiction of Houston.

3. There were other adjudications as to certain other territory covered by other ordinances that determined disputes between Houston and Pasadena, but they are not material to a decision of any issue before us in this case.

On June 22, 1962, in Cause No. 594,632, judgment was rendered and entered by the 129th District Court. This was the counter quo warranto suit filed by the State on the relation of Pasadena and La Porte in which they became movants against Houston and in which they affirmatively attacked, among other ordinances, Houston Ordinance 60–989 and sought to establish the validity of Pasadena Ordinance 1449. This judgment determined that the issues in the case had been finally adjudicated in Cause No. 571,595 and thus the cause had become moot. It declared that because of the other judgment there was no justiciable controversy between the parties as to the issues set out in the petition and information. These judgments became final and have in no way been changed.

Tranquility seems to have prevailed until December 5, 1962. On this date the City of Houston passed on first reading Ordinance 62–1766 which began annexation of a ten foot strip of land to the south of Pasadena. The north segment of the ten foot strip had for its north line the north line of Genoa-Red Bluff Road which was the south line of Pasadena as fixed by court judgment as above noted. The 10 foot strip is shown on our diagram beginning at Point A where it connected with land indisputably within the limits of the City of Houston. It proceeds from Point A between parallel lines, as shown on our diagram, substantially along the devious route marked at intervals by the City of Houston Ordinance 62–1766 and the letters B, C, D, E, F, G, H, I, J, K, L, M and N. Point N would mark the joinder of the 10 foot strip to the previously established limits of the City of Houston. This ordinance was passed on final reading January 16, 1963. The large area lying between the interior line of the 10 foot strip was not covered by Ordinance 62–1766. However, it was still covered by Ordinance 60–989,

which had been passed on first reading and was still pending awaiting further action. The 10 foot strip was a part of the area that had by the above judgment been declared to be within the exclusive annexation jurisdiction of Houston. On February 13, 1963, Ordinance 60–989 was passed on second reading but deleted small areas from that contained in the ordinance when passed on first reading. Such deletions do not, however, in any way eliminate an area covered by the other ordinances involved in this suit.

The state of affairs remained static after the final passage of Houston Ordinance 62–1766, until August 18, 1965. On the latter date Houston passed Ordinances 65–1561 and 65–1555A.

It should here be noted that the Legislature of Texas in 1963 adopted the Municipal Annexation Act which we will refer to as Article 970a, Vernon's Ann.Tex. Civ.St. We need here notice only the substance of Sections 6 and 7. Section 6 provides that before a city may institute annexation proceedings it shall provide an opportunity for all interested persons to be heard at a public hearing to be held not more than twenty days nor less than ten days prior to instituting such proceedings. Notice of the hearing is to be published in a newspaper of general circulation in the city and territory proposed to be annexed. The notice shall be published at least once not more than twenty days nor less than ten days prior to the hearing. Annexation of the territory shall be brought to conclusion within 90 days of the date on which the annexation proceedings were instituted or the annexation shall be null and void. So far as materiality here is asserted, Subdivision D of Section 7 provides that as to any annexation pending on or instituted after March 15, 1963, the annexation shall be brought to completion within 90 days after the effective date of the Act. Article 970a went into effect August 22, 1963. The dead line for completing proceedings that were pending was November 20, 1963.

Houston Ordinance 65–1561, as shown by its provisions, was the declaration of that City's intention to institute proceedings to annex the area described, which is substantially as appears on the shaded or closely dotted area on our diagram. Section 2 called for the hearing to be held in the Houston Council Chamber at 11 a. m., September 1, 1965. Section 3 directed the City Secretary to publish the notice in a newspaper of general circulation in Houston and the territory to be annexed at least one time not more than twenty days nor less than ten days prior to the day of the hearing. Section 4 stated the passage of the ordinance was intended to comply with Section 6 of the Municipal Annexation Act, provided such Act was valid. Section 6 also provided the ordinance should not affect any ordinance already passed on one or more readings, but not finally passed, and in addition expressly made such assertion as to Ordinance 60–989 which was passed on first reading June 22, 1960, on second reading as amended on February 13, 1963, and on third reading as amended on December 16, 1964. The section also *provided that the procedure for annexation by this ordinance was independent of any proposed and pending annexation of the territory described and such other proceedings should not be affected by it.*

On the same day Houston passed on first reading Ordinance 65–1555A. This ordinance described the same territory as Ordinance 65–1561 and was passed on first reading. Section 2 of the ordinance contains the recital that the ordinance does not repeal, impair, modify or in anywise affect any annexation ordinance whether completed or pending, including Ordinance 60–989. *Then there is the express provision that the ordinance shall not affect any ordinance theretofore or thereafter passed calling for a hearing and giving notice relative to the institution of any annexation proceedings.* It also provided that proceedings under this ordinance were independent of any other proposed and pending annexation of such territory.

On September 21, 1965, after the date set for public hearing by Ordinance 65–1561, Houston Ordinance No. 65–1555B was introduced and passed on first reading. It described the same territory as contained in Ordinance 65–1561. On passage on first reading it was referred to the Ordinance Committee. It was amended and passed on second reading October 6, 1965, and was passed on final reading November 16, 1965. It is shown in the record as Houston Ordinance 65–1555BR. The letter "R" merely shows it was amended after it was introduced. It is significant that the ordinance as introduced or amended added no territory to that described in Ordinance 65–1561, but as amended and finally passed eliminated a small portion of the southwest part of the shaded area on our diagram. The portion eliminated did not disturb adjoinder along a substantial area of the existing limits of Houston as established since 1956 and did not destroy adjoinder with the 10 foot strip covered by Ordinance 62–1766. The ordinance also eliminated two relatively small areas just west and northwest of the shaded area marked "Red Bluff". This Houston Ordinance 65–1555BR was obviously the one passed pursuant to the intention to initate annexation proceedings expressed in Ordinance 65–1561. This was a proceeding under Article 970a, V.A.T.S.

Houston Ordinance 65–1555AR was passed on first reading August 18, 1965; amended and passed second reading October 6, 1965, and finally passed November 16, 1965. This covered the same territory as Ordinance 65–1555BR. Quite obviously Houston, by Ordinance 65–1555AR, was following annexation procedure existing independently of said Article 970a, so that if the latter statute be invalid Houston would still have validly annexed the territory.

After Houston had passed Ordinance 65–1561 on December 18, 1965, and had on the same date passed Ordinance 65–1555A on first reading, the City of Pasadena became active.

On August 20, 1965, it passed Ordinance 1698 which really defined its existing boundaries and showed the north line of Genoa-Red Bluff Road to be the south city limit line of Pasadena as fixed by the judgment in Cause 571,595. On the same day Pasadena passed Ordinances 1699 and 1700 on first and final reading as emergency ordinances. Both ordinances were purportedly passed under the authority of Article 1183, V.A.T.S., Acts of 1913, p. 47, which in substance gives cities, located on navigable streams and operating under special charters, the right to annex territory on each side of the thread of such stream for a distance of 2500 feet in width and for a distance down said stream 20 miles or less in an air line from the ordinary boundaries of such a city. Such an annexation is for the limited purpose of establishing and developing wharf and navigational facilities for the use of industries and any inhabitants located within the area.

Pasadena Ordinance 1699 described an area for a width of 2500 feet on either side of "Middle Bayou" and extending southeasterly 1.51 miles in air line from the city limit line of Pasadena. It is significant that the beginning point is in the north right-of-way line of Genoa-Red Bluff Road 2500 feet east of the thread of the Bayou. The northwesterly line calls for an intersection with the north right-of-way line of Genoa-Red Bluff Road. From such point of intersection the call is to the place of beginning. This ordinance thus includes 5000 feet of the 10 foot strip covered by Houston Ordinance 62–1766. It also covers a part of the area covered by Houston Ordinances 65–1561 and 65–1555A that were passed two days earlier.

Ordinance 1700 is the same type of ordinance passed pursuant to Article 1183, V.A.T.S. It began at a point one mile south of what it called the "present" city limits of Pasadena and the south boundary of a strip of land included in Houston Ordinance 65–1555A, and 2500 feet east of the thread of the Bayou. It proceeded to the north

shore line of Clear Lake, thence westerly along such shore line to intersect with a line 2500 feet west of the thread of the Bayou, thence to a line one mile south of the "present" south city limit line of Pasadena, thence to the place of beginning. The total distance of the two ordinances was 5.6 miles in an air line from the south boundary of Pasadena as established by Ordinance 1698 passed August 20, 1965. The territory covered by Ordinances 1699 and 1700 is shown on our diagram by the checkered area, except that the checkered protrusions on the east and west side of the east and lines that run 2500 feet from and parallel to the thread of the Bayou were not covered by these two ordinances. The protrusions were purportedly annexed by Pasadena Ordinance 1722. These two protrusions connected with portions of the lines fixed by Ordinance 1700. No part of such areas is adjacent or contiguous to the city limit lines as fixed by the judgment in Cause 571,595 or Ordinance 1698.

The quo warranto proceeding out of which this appeal arose sought ouster of Pasadena from the territory covered by Pasadena Ordinances 1699, 1700 and 1722 because they entrenched upon territory finally annexed by Houston Ordinance 62–1766 in January, 1963, more than two years before the introduction by Pasadena of the above three ordinances. Too, Houston asserted the territory covered by said ordinances invaded territory declared to be within the exclusive annexation jurisdiction by the final agreed judgments in Causes 571,595 and 594,632, and Pasadena was, therefore, estopped by said judgments to invade any of such territory. Further, Houston asserted that it also acquired priority in annexation jurisdiction by the passage of Ordinances 65–1561, 65–1555AR and 65–1555BR over the territory covered by the Pasadena ordinances.

Pasadena answered, contending, and here contends, in substance as follows:

1. The judgments do not operate as an estoppel or res adjudicata because of changed conditions since their rendition, particularly the passage of Article 970a. Further, it says the judgment describing the area saved to Pasadena was defective. Too, it says its annexations under Ordinance 1699 and 1700 were pursuant to Article 1183 which was not affected by Article 970a. It purported, in the passage of Ordinance 1722, to comply with Article 970a.

2. Houston Ordinance 62–1766 did not annex territory adjacent to Houston but the territory was a long narrow strip of land unsuited to the economic needs of Houston.

3. Houston Ordinance 62–1766 was unreasonable and arbitrary and was passed solely to prevent Pasadena from expanding, and denied Pasadena its rights under the Ninth Amendment to the Constitution of the United States.

4. Houston Ordinance 65–1561 was not published as required by Article 970a, but was published by caption only and it follows that Ordinances 65–1555AR and 65–1555BR are invalid.

Both Pasadena and Houston filed motions for summary judgment. Pasadena's motion was overruled and Houston's was sustained.

The judgment declared that all territory described in Houston Ordinances 62–1766, 65–1555AR and 65–1555BR was validly annexed to the City of Houston and is a part of said City. It ousted the City of Pasadena from any usurped or pretended claim of municipal authority or annexation jurisdiction over all or any part of the territory described or attempted to be described in Pasadena Ordinances 1699, 1700 or 1722 encroaching on Houston's finally annexed territory lying south of Pasadena's city limits (the north line of Genoa-Red Bluff Road) set out in the final judgment of the 55th District Court in Cause No. 571,595 rendered on June 22, 1962. Too, Pasadena was perpetually enjoined from exercising or claiming any municipal authority or annexation jurisdiction within all or any portion of the territory attempted to be annexed by such Pasadena ordinances.

The trial court correctly sustained the motion for summary judgment of the City of Houston and correctly denied that of the City of Pasadena.

■ Insofar as Houston Ordinance 62–1766 is concerned, it was introduced December 5, 1962, and was finally passed January 16, 1963. It annexed a part of the territory that had been included in Houston Ordinance 60–989 that had been upheld by the judgment which judicially declared the territory was within the exclusive annexation jurisdiction of Houston. The main issue in Cause 571,595 and Cause 594,632 was whether said Ordinance 60–989 or Pasadena Ordinance 1449 had preempted annexation jurisdiction over the area south of the north line of Genoa-Red Bluff Road. By reason of the final judgment favorable to Houston, there having been no changed conditions prior to the final passage of Ordinance 62–1766, Pasadena is estopped by the judgments from asserting the area annexed by said ordinance was not adjacent to the City of Houston and exclusively within its annexation jurisdiction. This issue had once been litigated by the parties and could not be litigated a second time. Houston Terminal Land Company v. Westergreen, 119 Tex. 204, 27 S.W.2d 526; Permian Oil Company v. Smith, 129 Tex. 413, 107 S.W.2d 564, 111 A.L.R. 1152. At the time of the passage of Ordinance 62–1766 and thereafter, Ordinance 60–989 remained a live piece of legislation. The ordinance expressly provided that its passage should in nowise affect any ordinance theretofore passed on one or more readings but not finally passed, but any such ordinances, including 60–989, should remain and continue to be effective to their intent and purpose therein stated. Too, Ordinance 60–989 was passed on second reading February 13, 1963. Thus, the ordinance that had by the court in its previous judgments been held to have validly preempted annexation jurisdiction to Houston remained effective at the time a part of the territory was finally annexed by Ordinance 62–1766. Article 970a, V.A.T.S., had not become effective so as to affect the efficacy of Ordinance 60–989. Its terms were such as not to affect said ordinance until November 20, 1963; so that until such date the territory encompassed within it remained within the exclusive annexation jurisdiction of Houston. Red Bird Village v. State ex rel. City of Duncanville, 385 S.W.2d 548 (Tex.Civ.App), writ ref.

■ In addition to the fact, as we have just discussed, that Pasadena is judicially estopped from asserting that the area annexed by Houston Ordinance 62–1766 is not adjacent to the City of Houston and therefore its later Ordinances 1699, 1700 and 1722 are valid, we hold that Ordinance 62–1766 annexed territory that was adjacent to Houston under the decided cases. The agreed judgments fixed the south line of Pasadena. This left the land south of Pasadena and south and southeast of Houston mutually adjacent territory and it was such at the time Houston introduced and then finally passed Ordinance 62–1766. Pasadena did not initiate its Ordinances 1699, 1700 and 1722 until more than two years later. Houston, by first passing Ordinance 62–1766, was prior in right to annex. Beyer v. Templeton, 147 Tex. 94, 212 S.W.2d 134.

As shown by affidavits of two engineers, which are uncontroverted, the various ordinances and the judgment in Cause No. 571,595, described the territory annexed as we have depicted it on our diagram. Such affidavits and our laborious study of the descriptions establish to us that there were no deficiencies in description. Too, the uncontroverted affidavits and our study indisputably establish that Pasadena Ordinance 1699 runs across the strip previously annexed by Houston Ordinance 62–1766 and Pasadena Ordinances 1699, 1700 and 1722 encroach upon territory covered by territory described in Houston Ordinances 65–1561, 65–1555AR and 65–1555BR. There was, therefore, no fact issue concerning whether Pasadena's ordinances attacked in this suit entrenched upon territory over which Houston claimed priority. The appeal will turn

on the validity, as a matter of law, as shown by the record, of the ordinances.

■ Whether territory is adjacent to a city is a question of law. State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W.2d 780.

We have stated above the substance of Pasadena's attack, particularly on Ordinance 62–1766. We hold that the area encompassed within Ordinance 62–1766 was adjacent to the City of Houston under the principles set forth in the following cases: State ex rel. Pan American Petroleum Co. v. Texas City, supra; State ex rel. City of West University Place et al. v. The City of Houston, 322 U.S. 711, 64 S.Ct. 1159, 88 L. Ed. 1554; City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928; City of Gladewater v. State ex rel. Walker, 138 Tex. 173, 157 S. W.2d 641; State ex rel. Graves v. City of Sulphur Springs, 214 S.W.2d 663 (Tex.Civ. App.), ref., n. r. e.; State v. City of Waxahachie, 81 Tex. 626, 17 S.W. 348; Lefler et al. v. City of Dallas, 177 S.W.2d 231 (Tex. Civ.App.), n. w. h.; Bute v. League City, 390 S.W.2d 811 (Tex.Civ.App.), n. w. h.

■ There is nothing in the Constitution of the United States that invalidates any of said ordinances of Houston. It is for a state to determine the authority of its agencies to carry out the governmental powers of the state. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (U.S.S.Ct.); Hunter v. City of Pittsburg, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151; Risty v. Chicago R. I. & P. Ry. Co., 270 U.S. 378, 46 S.Ct. 236, 70 L.Ed. 641; State ex rel. City of West University Place et al. v. City of Houston et al., supra, and numerous authorities there cited.

■ The effect of our holding above is that the territory covered by Pasadena Ordinances 1699, 1700 and 1722 lying below the north line of Genoa-Red Bluff Road is not validly a part of the City of Pasadena because the ordinances encompassed territory not adjacent to existing limits of such City when they were initiated and passed.

Pasadena's contention that Ordinances 1699 and 1700 were valid because they were enacted pursuant to Article 1183, V.A.T.S., cannot be sustained.

■ Article 1187, V.A.T.S., places a limitation on the apparent authority of Article 1183. Article 1187 provides that the power granted shall not authorize the extension of the territory of any city for the limited purposes named so as to include any land which is already a part of any other city or town corporation or any land at the time belonging to any other city or town. Article 1183 in effect provides for annexation to begin at the ordinary boundary of an annexing city. Ordinance 1699 encroached upon land validly annexed to Houston and was, therefore, invalid. The validity of Ordinance 1700 depended on the validity of Ordinance 1699. It, too, is invalid. The validity of Ordinance 1722 insofar as it covered territory south of the north line of Genoa-Red Bluff Road depended on the validity of Ordinances 1699 and 1700. It is also invalid. See City of Galena Park et al. v. City of Houston, 133 S.W.2d 162 (Tex.Civ. App.), writ ref.

Ordinance 65–1555AR was, as we understand the record and appellees' brief, passed as an independent annexation proceeding under the Charter of the City of Houston and under Article 1175, V.A.T.S., though it encompassed the same territory as Ordinance 65–1555BR. Since it was initiated after the effective date of Article 970a, it would not of itself operate to annex the territory described because under 970a, Section 6, it was necessary to give and publish notice of intention to annex. As stated in appellees' brief, Ordinance 65–1555AR was passed under the charter and general law, so that if Article 970a was invalid Houston would still have a valid proceeding. However, Ordinance 65–1555BR was allegedly passed pursuant to the terms of Article 970a. By Ordinance 65–1561 the proceedings were initiated. This Ordinance was

required to give notice of the intention to annex the described territory, and fix a time and place of hearing. This initiating ordinance must be published in its entirety. The record here does not affirmatively show that it was so published or that there was a public hearing. Pasadena in its answer had alleged it was not published. Stamped on the ordinance was this language: "Caption Published in Houston Chronicle—Date August 25, 1965." Appellees argue that since the ordinance specifically directed publication by the City Secretary it will be presumed such public official performed her duty and the burden was on the appellant to, by an affidavit and not mere pleading, assert the want of publication.

It is true that normally there is a presumption that a public official performed his duty. This is a summary judgment case and the burden in on the movant to show that considering the pleadings, exhibits, depositions and affidavits there is no genuine issue of fact. The evidentiary facts are construed most strongly against the movant. If a reasonable inference may be drawn that a material ultimate issue exists, summary judgment may not be granted. The burden was on Houston to establish as a matter of law the validity of the ordinance as a part of its case. We are of the view that from the notation stamped on the ordinance that the "Caption" was published, a reasonable inference may be drawn that this was the only form of publication. We are not unaware that the City charter provides for publication of ordinances by caption, but this was a proceeding under Article 970a and publication by caption would not have been required nor sufficed. Therefore, a fact issue was raised concerning the validity of annexation under Ordinance 65–1555BR.

We would make it clear that the trial court correctly declared Pasadena Ordinances 1699, 1700 and 1722 invalid because they annexed land not adjacent to Pasadena because of Houston's prior valid annexation under Ordinance 62–1766 and also for such reason correctly ousted Pasadena from the territory south of the northline of Genoa-Red Bluff Road. For this reason the trial court correctly granted the State's motion for summary judgment. However, the State's pleading prayed also for a judgment declaring that the territory covered by Houston Ordinances 65–1555AR and 65–1555BR had been validly annexed to the City of Houston. The trial court's judgment made this declaration and determination. We have held, however, that a fact issue was raised concerning the validity of Ordinance 65–1555BR because of the fact issue concerning the publication of Ordinance 65–1561. Ordinance 65–1555AR really did not validly annex any territory because it did not comply with Article 970a. This presents us with a question of just what judgment we should render.

We have determined that the issues as to the validity of Ordinances 65–1555AR, 65–1555BR and 65–1561 and the causes of action they constitute are severable from the causes of action involving the validity of Houston Ordinance 62–1766 and Pasadena Ordinances 1699, 1700 and 1722. We, therefore, sever such issues and causes of action and remand them to the trial court with instructions to dismiss them without prejudice. We order such causes dismissed because Pasadena is the only defendant and it, in the light of our holding valid the other ordinance of Houston and invalid the specified Pasadena ordinance, leaves no respondent in the severed cause who has any legal standing to question such ordinances.

We affirm that part of the court's judgment holding valid Houston Ordinance 62–1766 and holding the territory therein described validly annexed to the City of Houston and holding Pasadena Ordinances 1699, 1700 and 1722 invalid and ousting Pasadena from the territory covered by them that lies south of the north line of Genoa-Red Bluff Road.

Affirmed in part, and in part severed and as severed reversed and remanded with instructions.

On Motions for Rehearing

Both appellant, the City of Pasadena, and appellee, The State of Texas, have filed a motion for rehearing.

Appellant's motion as to the merits of the appeal is purely formal in asserting the various respects in which we allegedly erred in our original disposition of the appeal. In this connection it does complain that we did not expressly notice the case of City of Irving v. Dallas County Flood Control District, Tex., 383 S.W.2d 571. We thoroughly studied the case and found nothing in it that would require a holding different from the one we made on the issues before us.

Appellant did thoroughly brief the question of whether the writer of the original opinion was disqualified. I would only add briefly to what Associate Justice Coleman has thoroughly discussed in his concurring opinion on motion for rehearing on the matter of disqualification.

■ On original submission, the writer raised the question as to whether he was disqualified because of ownership of 100 shares of stock in Standard Oil (N.J.), which owned all of the stock in Humble Oil & Refining Company, the latter company being one of the relators in the case. Associate Justice Werlein also stated he owned either 100 or 200 shares in Standard Oil (N.J.). We asked for and were furnished briefs on this question. Prior to disposition of the case Associate Justice Werlein had retired and disposition of the case was made by the concurrence of Associate Justice Coleman and the writer. While we did not write on this question, we carefully considered it and came to the conclusion that the writer was not disqualified. The case having fallen to the writer for the writing of the opinion, and he not being disqualified, felt it his responsibility to write the opinion.

When the motions for rehearing were filed, Associate Justice Peden had become a member of the Court. We on our own motion set the motions for oral argument and oral argument was had. The writer asked his two associates to independently consider the question of his disqualification. They have done so and, as evidenced by Associate Justice Coleman's concurring opinion, have found him qualified. On independent consideration, the writer concurs in that conclusion. It thus becomes the writer's duty to participate in the decision and not to dodge responsibility.

Appellee urges that we were in error in holding the trial court erred in granting summary judgment upholding the validity of City of Houston Ordinance 65–1555BR, because there was a fact issue as to whether notice of a hearing had been published as required by Article 970a, Section 6, V.A.T.S.

We incorrectly stated that Article 970a, Section 6, required that the whole of the ordinance (65–1555) giving notice of a city's intention to annex designated territory and giving notice of the fact and time of hearing before the ordinance of annexation could be introduced must be published. Said Section 6 actually provides that before a city may institute annexation proceedings it shall afford an opportunity for all interested persons to be heard at a public hearing to be held not more than twenty days nor less than ten days prior to the institution of such proceeding. It requires that notice of such hearing shall be published at least once in a newspaper of general circulation in the territory to be annexed not more than twenty days nor less than ten days prior to the hearing. Further it is provided that notice by certified mail should be given any railroad company serving the city and on the city tax rolls where the right-of-way is included in the territory to be annexed.

Pasadena in its answer pled that the annexation ordinances passed by Houston in 1965 were void because no notice of annexation proceedings was given to interested persons and no opportunity for a public hearing was extended to such persons.

The State says the attack on the Houston ordinances by Pasadena is collateral and the ordinances being regular on their face it will be presumed that all procedural requirements were complied with and it will be presumed the City of Houston officials performed their duty. The State further states that the stamp on Ordinance 65–1555 showing a publication of the caption shows only that the City Secretary was complying with the City charter which requires only that the caption of all ordinances be published and it cannot, therefore, be reasoned that this was the only publication.

■ We fail to see this was a collateral attack. The State brought the suit asserting the invalidity of the Pasadena ordinances because they annexed territory that had previously been annexed by the Houston ordinance. It seems to us this directly places in issue the validity of the Houston ordinances and the burden was on the State to establish their validity. It also gave Pasadena the right to attack the Houston ordinances, which it has done. The cases on collateral attack that are cited by the State are cases to which the State was not a party.

It is true that the Houston City Charter requires the caption only of all ordinances to be published. One inference to be drawn from the stamp on Ordinance 65–1555 is that this only showed compliance with the City Charter. However, this being the only showing with regard to any publication of anything relating to the ordinance, we think the inference could also be drawn that there was no further publication and, therefore, the requisite notice was not published.

This raises a fact issue.

Appellant's motion for rehearing is overruled.

Appellees' motion for rehearing is overruled.

## CONCURRING OPINION

COLEMAN, Justice.

Upon the submission and oral argument of this cause, Chief Justice Spurgeon E. Bell announced that he was the owner of 100 shares of the common stock of Standard Oil Company of New Jersey. Associate Justice Ewing Werlein announced that he either owned, or had a beneficial interest in the income from, a comparable number of shares in the same company. Since it was common knowledge that all of the stock of Humble Oil & Refining Company, one of the relators herein, is owned by that company, the Chief Justice requested briefs from the parties as to whether such stock ownership disqualified them from sitting in this case. After studying the briefs and concluding that the stock ownership did not constitute such an interest in the case as was contemplated by Article 5, Sec. 11, Constitution of the State of Texas, Vernon's Ann.St., the case was decided and an opinion handed down on November 9, 1967.

In the motion for rehearing filed by appellant, it was contended that the Court as then constituted was disqualified. The Court then set the case for oral argument. By reason of the retirement of Associate Justice Werlein, two members of the Court as constituted at the time of the second oral argument owned no stock in Standard Oil Company of New Jersey. However, since the original opinion in the case did not discuss the question of disqualification, it was thought proper that the matter be discussed in an opinion on the motion.

Article 5, Sec. 11, Constitution of the State of Texas, provides as follows: "Sec. 11. No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case."

The disqualification of a judge under the Constitution renders him incompetent to act in the case and cannot be waived by the parties. Chambers v. Hodges, 23 Tex. 104 (1859); Postal Mutual Indemnity Co. v. Ellis, 140 Tex. 570, 169 S.W.2d 482 (1943).

The Texas case most nearly in point is Pahl v. Whitt, 304 S.W.2d 250 (Tex.Civ. App., El Paso 1957, no writ hist.). This was a case brought by certain men "individually, as members of the Central Texas Electric Cooperative, Inc., * * * as a class, against the Central Texas Electric Cooperative, Inc.," and others seeking to enjoin the corporation from prosecuting certain libel suits and to recover certain funds expended in connection with the suits. The trial judge announced that he was a member of the "Central Texas Electric Co-op," and received "public service from the Co-op in Kerr County." The parties agreed to waive the disqualification of the judge if there was such disqualification. On appeal the question was raised, the contention being that the judgment was a nullity. The court sustained this contention, and in the opinion stated:

"In other words, if a Cooperative makes money, its members may receive dividends in the form of money or lowered rates for electricity, thus such members are in very much the same situation as stockholders in a corporation.

"It has long been held that a stockholder in a corporation is disqualified to sit as judge in a trial wherein the corporation is a party. 48 C.J.S. Judges § 80, p. 1051; Templeton v. Giddings, Tex., 12 S.W. 851; King v. Sapp., 66 Tex. 519, 2 S.W. 573; 25 T.J., pp. 272, 273. Also, as a rule, a judge is disqualified from sitting at the trial of an action against a mutual association of which he is a member. Sovereign Camp. Woodmen of the World v. Hale, 56 Tex.Civ.App. 447, 120 S.W. 539; New York Life Ins. Co. v. Sides, 46 Tex.Civ.App. 246, 101 S.W. 1163.

"* * *

"There is one question in this case which does not arise in any of the other cases cited. It must be remembered that this case was brought by the appellants, not only for themselves as members of the Cooperative, but for every other member as a class, which included the judge himself. For this reason alone, we are compelled to hold that the trial judge was disqualified to try the case. If each of the named parties plaintiff that brought this suit has a justiciable interest in the suit, so does the Judge. Whatever benefits hoped to be obtained by the plaintiff members who brought this suit if successful, would inure to the benefit of the trial judge; as each is affected by the results of the suit, so would be the trial judge."

Undoubtedly the decision of the court was correct under the reasoning last quoted. The statement that it has long been held that a stockholder in a corporation is disqualified to sit in a case wherein the corporation is a party is supported by the citations to Corpus Juris Secundum and Texas Jurisprudence, but the Texas cases cited are not precisely in point. Templeton v. Giddings, 12 S.W. 851 (Tex.Sup.1889), involved a promissory note assigned as collateral by a "firm" of which the trial judge was a member, the "firm" being the payee of the note.

The other Texas case cited, King v. Sapp, 66 Tex. 519, 2 S.W. 573 (1886), was a case wherein it was alleged that the trial judge was disqualified because he had been a counsel in causes between the defendant and other parties growing out of the same transaction as this suit and involving the same questions. The Supreme Court noted that the record did not disclose that the judge had any pecuniary interest in the outcome of the cases in which he had been employed, or that the decision in the present case would determine those cases and stated:

"The law enumerates the only instances in which an interest not neces-

sarily pecuniary will disqualify a district judge. These are where he has been of counsel in the cause, or where either of the parties may be connected with him by affinity or consanguinity within the third degree. Rev.St. art. 1090. By naming these special cases where the judge's feelings may be interested, though he may not gain or lose by the event of the suit, the law doubtless intended to limit all other cases of interest to such as should be of a pecuniary nature. The judge must, by the judgment in the case, gain or lose something, the value of which may be estimated."

This holding that before a judge will be disqualified, it must appear that a pecuniary gain or loss on the part of the judge will necessarily result from the outcome of the suit being tried before him, was reiterated by the Supreme Court of Texas in Hidalgo County Water Improvement Dist. No. 2 v. Blalock, 157 Tex. 206, 301 S.W.2d 593 (1957). In this case the Court stated:

"If his interest in the question is indirect, uncertain, or remote, and the result of the suit will not necessarily subject him to a personal gain or loss, he is not disqualified to sit in the case. Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515, 70 A.L.R. 1484; City of Oak Cliff v. State ex rel. Gill, 97 Tex. 391, 79 S.W. 1068. Judge Blalock is not a party to the main suit, and any judgment which may be rendered therein for or against the District from which he purchases water would affect him only indirectly. * * *

"The most serious question for decision is raised by the fact that Judge Blalock's home is located in an original porcion which abutted on the Rio Grande at the time the grant was made by the Crown of Spain. * * * Stated differently, it is suggested that it will be decided in this case whether Judge Blalock has an individual, personal right to set up a system of his own whereby he can pump water from the

river three miles away for irrigation purposes * * * Our view is that the possibility of any direct injury to Judge Blalock on account of his being deprived of the right to set up an irrigation system of his own is too highly remote and speculative to disqualify him to sit in the case."

In Love v. Wilcox, 119 Tex. 256, 28 S.W. 2d 515 (1930), the Court stated:

"Soon after the adoption of the present Constitution, the judge of the district court of Jefferson county announced that he was embarrassed to proceed with a trial because 'of his personal interest adverse to the appellants in the *questions involved* in this cause.' The objection to the judge's qualification to determine the cause was overruled by the Supreme Court in an opinion by Judge Bonner, stating:

" 'The constitution prohibits a judge from sitting in a case in which he may be interested. Const.1876, art. V, sec. 11.

" 'The statute is to the same effect. R.S., art. 1090.

" 'The interest of the learned judge presiding, however, was simply in the question involved, and not in the result of the suit. This was not such disqualifying interest as would prevent him from trying the cause, or would authorize the appointment of a special judge.

" 'The presiding judge not having been disqualified, it was his duty, however embarrassing, to have proceeded with the trial. Taylor v. Williams, 26 Tex. 583; Houston & T. C. Railway Co. v. Ryan, 44 Tex. 426; Davis v. State, 44 Tex. 523; 1 Greenl.Ev., § 389.' McFaddin v. Preston, 54 Tex. 403, 406.

" * * *

"In Judge Brown's carefully considered opinion in the case of the City of Oak Cliff v. State, 97 Tex. 391, 79 S.W. 1068, it is said: 'In his treatise on Courts, Mr. Work expresses the result of the

authorities upon the question thus: "The interest which will disqualify a judge must be direct and immediate, and not contingent and remote." Page 396, 79 S.W. 1068.'

"After reviewing the Texas cases relied upon as sustaining a contrary conclusion, Judge Brown's opinion continues with the statement: 'It is apparent from these authorities that in each case the interest of the presiding judge was directly and immediately affected by the judgment that he entered—it acted immediately upon the subject without the interposition of other authority—and each came strictly within the rule laid down by Mr. Work.'

"Finally, Judge Brown's opinion definitely and positively approves the declaration in a cited New York case (In re Ryers, 72 N.Y. 1, 28 Am.Rep. 88) that the true rule is 'that where a judicial officer has not so direct an interest in the cause or matter as that the result must *necessarily* affect him to his personal or pecuniary loss or gain, * * * then he may sit.'

"In accordance with the court's decision that the Constitution, rightly construed, does not disqualify him, the Chief Justice has participated in the decision of all other questions in this case save that relating to his disqualification."

A case directly in point was decided by the Supreme Court of California. In Central Pac. Ry. Co. v. Superior Court, 211 Cal. 706, 296 P. 883 (1931), the court stated:

"This brings us naturally to the consideration of the second ground of disqualification which was urged before the trial court and is still insisted upon here. This other alleged disqualification was held to consist in the admitted fact that Judge Luttrell was at the time of the institution of the original action and continued to be thereafter a stockholder in a corporation known as Transamerica Corporation, which was asserted in the statement presented and filed before the trial court to be the owner of substantially all of the capital stock of the Bank of Italy National Trust & Savings Association. Had the Transamerica Corporation been made a party to said original action, the situation would doubtless have been one directly covered by the provisions of section 170 of the Code of Civil Procedure as above amended. But the fact that, whatever the relationship thus alleged to exist between Transamerica Corporation and Bank of Italy National Trust & Savings Association might be, the former corporation was not a party to said action and hence does not come within the intendment of said action. Neither do we think that the situation as thus presented could in any event constitute a disqualification under the well-settled rule above stated that the alleged disqualifying interest must appear to be an immediate and direct interest in the outcome of the litigation. To be a stockholder in some corporation which is not and could not be made a party to the action cannot by any stretch of reasoning be held to amount to a disqualification, and we are cited to *do* no authority which so holds. On the contrary, the cases not only within our own but other jurisdictions have expressly held that in such cases no disqualification exists. Central Sav. Bank of Oakland v. Lake, 201 Cal. 438, 444, 257 P. 521; Favorite v. Superior Court of Riverside County, 181 Cal. 261, 184 P. 15, 8 A.L.R. 290; Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; Texas Farm Bureau Cotton Ass'n v. Williams, 117 Tex. 218, 300 S.W. 44; Webb v. Town of Eutaw, 9 Ala.App. 474, 63 So. 687; People v. Whitridge, 144 App.Div. 493, 129 N.Y.S. 300."

Neither Standard Oil Company of New Jersey nor Humble Oil & Refining Company has an "interest" in this case in the sense that the word "interest" is used in the Constitutional provision under discus-

sion. The companies are interested in the question to be determined by this case, but neither company necessarily will be subject to a pecuniary loss or gain by the outcome of this suit. Neither company has an interest different from other members of the public in the subject matter of this suit, that is, whether the territory in question has been validly annexed by the City of Pasadena, or is subject to the exclusive annexation jurisdiction of the City of Houston and has been annexed in part by that City. In the petition on which this suit went to trial, no special relief was prayed for on behalf of Humble Oil & Refining Company, nor was it granted any special relief by the judgment entered by the trial court.

This suit was originally brought by the State of Texas on the relation of the City of Houston. In the First Amended Original Petition, Humble Oil & Refining Company appeared as an additional relator. This is a quo warranto proceeding. Such an action is one by which the State acts to protect itself and the good of the public generally, although the suit is, at times, brought at the instance of and for the benefit of a private individual who may have a special interest in the matter. Staples v. State, 112 Tex. 61, 245 S.W. 639 (1922).

Although a relator may be responsible for setting in motion a quo warranto proceeding by an information, the conduct and continued prosecution of the cause is under the exclusive control of the State, and such proceeding may be brought by the State without a relator. Denison v. State, 61 S.W.2d 1017 (Tex.Civ.App., Austin 1933, error ref.); State ex rel. Bennett v. Clarendon Ind. School Dist., 156 Tex. 542, 298 S.W.2d 111 (1957).

Where relators, joined by the District Attorney, instituted proceedings in the nature of a quo warranto, after securing the required permission of the District Judge, and proceeded to trial without the actual participation of the District Attorney, and attempted to appeal a judgment dismissing the cause without the District Attorney joining in the appeal, this Court dismissed the appeal for want of jurisdiction stating that it had no jurisdiction of an appeal by the private relators alone, and that, had the State participated actively in the trial, the judgment was final as to it since the State did not appeal. State ex rel. Steele v. Heath, 44 S.W.2d 398 (Tex.Civ.App., Galv. 1931, error ref.). See also State ex rel. Cavanaugh v. Nelson, 170 S.W. 814 (Tex. Civ.App., Amarillo 1914).

It is equally true that had Humble Oil Company not joined in this suit as a relator, it would have been bound by the outcome of the suit, as is its parent company, Standard Oil Company of New Jersey. Williams v. White, 223 S.W.2d 278 (Tex.Civ. App., San Antonio 1949, error ref.); City of Ft. Worth v. Taylor, 162 Tex. 341, 346 S.W.2d 792 (1961).

This being the state of the law, it appears that neither Humble Oil nor Standard Oil has any more interest in this law suit than any other member of the general public, and that each is equally bound by the decision with all other members of the general public. It follows that neither Chief Justice Bell nor Associate Justice Werlein had an interest in this law suit different from that of all members of the general public. In such a case, it is firmly established that neither a trial judge nor a member of an appellate bench is disqualified. City of Dallas v. Peacock, 89 Tex. 58, 33 S.W. 220 (1895); City of Oak Cliff v. State, 97 Tex. 391, 79 S.W. 1068 (1904); Hubbard v. Hamilton County, 113 Tex. 547, 261 S.W. 990 (1924); Elliott v. Scott, 119 Tex. 94, 25 S.W.2d 150 (1930).